MONARCH VINEGAR WORKS v. CHICAGO, BUR-
    LINGTON & QUINCY RAILROAD COMPANY,
    Appellant.

In Banc, December 20, 1920.

1. **FREIGHT OVERCHARGES: Recovery: Stating Cause of Action.** In
a suit by a shipper to recover freight overcharges exacted by a rail-
road, a petition which, in each separate count, alleges the date,
place of origin, destination and weight forming the basis of the
count, the maximum freight permitted to be charged by
the Act of 1907, the charges actually exacted, the difference be-
tween the two rates, and the defendant's refusal to pay said dif-
ference, states a cause of action for the overcharges, and not one for
the penalty under Section 3248, Revised Statutes 1909.

2. ————: ————: ————: **Penalties: Separable.** The general rule is
that penalties provided for the violation of rate acts are not a
necessary or inseparable part of the acts, without which they would
not have been passed, and that overcharges in excess of legal
freight rates may he recovered if the act, stripped of its penalty
features, leaves a cause of action. The right to recover the actual
overcharges was not affected by the injunction in State v. C. B.
& Q. Railroad, 241 U. S. 553.

3. ————: ————: ————: **Prayer for Penalty.** The fact that the pe-
tition asks judgment for the penalty does not affect the plaintiff
shipper's right to judgment for overcharges in excess of the legal
maximum rate. If a petition states facts sufficient to warrant the
relief granted, the efficacy of these allegations is not destroyed
by a prayer for more than the stated facts justify.

4. ————: **Defense of Confiscation: Settled by U. S. Supreme Court.**
In view of the ruling of the Supreme Court of the United States in
the Missouri Rate Cases, to which the defendant railroad was a
party, the trial court, in this suit by a shipper to recover the
excess of freight charges above the legal rate provided by the Act
of 1907, did not err in refusing to permit defendant to introduce
evidence to show that the rate prescribed by the statute was con-
fiscatory at the time the shipments were made in 1911; for the
subsequent decision of that court (241 U. S. 533) was expressly to
the effect that its previous decision in the Rate Cases (230 U. S.
474) that the statutory rate was not confiscatory applied to ship-
ments made in 1911, 1912 and 1913.

Appeal from Jackson Circuit Court.—*Hon. T. J. Seehorn,* Judge.

AFFIRMED.

*H. J. Nelson* and *Warner, Dean, McLeod & Langworthy* for appellant; *O. M. Spencer* of counsel.

(1) Judgment should have been entered for the defendant, for the reason that under the pleadings and the evidence the plaintiff was not entitled to recover upon the alleged cause of action sued on. The plaintiff in its petition alleges the pendency of the proceedings to test the validity of the Maximum Freight Rate Laws, at the time of the shipments in question, and then asks for judgment for three times the amount of the alleged overcharge pursuant to the penal provisions of Sec. 3248, R. S. 1909. It is settled that there can be no recovery for such penalties. White v. Delano, 270 Mo. 33. (2) Plaintiff was allowed to recover, however, the actual difference between the old rate and the new rate, that is, it was allowed to recover on a different cause of action than that sued on. Its right to do so was challenged at all times. Plaintiff has no cause of action for penalties, although that is the ground upon which it sued. White v. Delano, 270 Mo. 33. In that case the court explicitly held that the penal section of the rate statute was suspended, but that the rate statute was not suspended. The court did not define the ground upon which recovery was permitted, but it was presumably upon common law principles. (3) That the plaintiff construes its suit to be one to recover under the penal section of the State statute and not otherwise, is apparent from the body of the petition, wherein it sets up facts in an effort to show that the three year limitation statute which applies to penalties was stayed. This is also apparent from the prayer to the petition, the evidence introduced, and the opinion of the referee.

The prayer of the petition is an index to the construction placed upon the petition by the pleader. State ex inf. Barker v. Ry. Co., 265 Mo. 678. (4) Since plaintiff sued to recover penalties under the statute, it should not have been permitted to recover at common law, because that was a different cause of action from that upon which it sued. Ensworth v. Barton, 60 Mo. 511; Eyerman v. Cemetery Assn., 61 Mo. 489; Huston v. Ale Works, 56 Mo. 416; Robinson v. Rice, 20 Mo. 229; Chitty v. Railroad, 148 Mo. 64; Ranning v. Met. St. Ry. Co., 157 Mo. 477; Harrison v. Railroad, 37 Mo. 307; Cole v. Armour, 154 Mo. 333; Hite v. Raliroad, 130 Mo. 132; 21 R. C. L. p. 608, sec. 152. Error is presumptively prejudicial. Davharsh v. Ry. Co., 103 Mo. 578; Hatch v. Bayless, 164 Mo. App. 223; Contracting Co. v. Storage Co., 186 Mo. App. 671; Morton v. Heidorn, 135 Mo. 618. (5) The court committed error in refusing to permit defendant to introduce evidence to show that the rate prescribed by the Maximum Freight Rate Law 1907, was confiscatory, and offered proof in support of were made in 1911. The defendant pleaded that the rate provided by the Maximum Freight Rate Law of 1907, was confiscatory, and offered proof in support of the plea. The question as to the reasonableness of the rate in 1911, was not adjudicated in the Missouri Rate Case, 230 U. S. 474, because the final decree in that case, which was entered in April, 1909, dealt with the situation prior to that time, and the shipments in question were all made in 1911. Defendant has the right to challenge the validity of the rate in a suit between a single shipper and the carrier. State of Missouri v. C. B. & Q. Railroad, 241 U. S. 538. The Missouri Rate Case did not deal with the question as to the validity of the rate under conditions as they existed almost three years after the entry of the final decree. Missouri v. C. B. & Q. Railroad, 241 U. S. 539. (6) A denial of the right to investigate the validity of the rate in 1911, which was long after the period with which the decree

dealt in the Missouri Rate Case, and permitting the plaintiff to recover the difference between the old rate and the new rate, would constitute the taking of property without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States. Chicago, Milwaukee & St. Paul Ry. Co. v. Minnesota, 134 U. S. 418. The record in the case of Missouri v. Chicago, Burlington & Quincy Railroad Co., 241 U. S. 536, shows that the Supreme Court did not pass and could not have passed upon the question involved in this case. Furthermore, the decree in the Missouri Rate Case did not and could not have prevented the defendant from showing the unreasonableness of the rate as applied to a particular shipper or a particular commodity. Arkadelphia Milling Co. v. St. Louis Southwestern Ry. Co., 39 Sup. Ct. Rep. 237, 243; Northern Pacific Ry. Co. v. North Dakota, 236 U. S. 585. (7) There was obviously very substantial merit in the defendant's contention that the rate on apples was confiscatory in 1911. State ex rel. v. Public Service Comm., 270 Mo. 565; 19 New International Encyclopaedia, p. 574; State ex rel. v. Public Service Comm., 270 Mo. 555.

*McCune, Caldwell & Downing* for respondent.

(1) The judgment was consistent with the case and within the issues found by the pleadings. White v. Delano, 270 Mo. 16; Sec. 2100, R. S. 1909; Hewitt v. Harvey, 46 Mo. 368; O'Bannon v. Railroad 111 Mo. App. 202; Conley v. C. B. & Q. and Wabash Rys., 192 Mo. App. 534; M. K. & T. v. Wulf, 226 U. S. 570, 57 L. Ed. 355; Liese v. Meyer, 143 Mo. 547; Saline County v. Sappington, 64 Mo. 72; Sharkey v. McDermott, 91 Mo. 657; Northcraft v. Martin, 28 Mo. 471; Iba v. Railway, 45 Mo. 469; McGrew v. Mo. Pac. Ry., 87 Mo. App. 250; Calvert v. Railroad, 34 Mo. 243; State ex rel. v. Sale, 153 Mo. App. 282; Plynell v. Meadows, 170 Mo. App. 37; State ex rel. v. Chicago & Alton Ry., 265 Mo. 646; Hartwig v. Ins. Co., 167 Mo. App. 128. (2) The

decision in the Missouri Rate Case, 230 U. S. 474, to which appellant was a party, is *res adjudicata* that the Maximum Freight Rate Laws of 1907 were not confiscatory as to all shipments made in 1911, and the court properly refused to relitigate that matter. Missouri Rate Cases, 230 U. S. 474, 57 L. Ed. 1571; State of Missouri v. C. B. & Q. Ry., 241 U. S. 533, 60 L. Ed. 1143; Milling Co. v. Southwestern Ry., 39 Sup. Ct. Rep. 237, 63 L. Ed. 517; 1 Ry. Co. v. McKnight, 244 U. S. 368, 61 L. Ed. 1200; Knoxville v. Knoxville Water Co., 212 U. S. 1, 53 L. Ed. 371; Darnell v. Edwards, 244 U. S. 564, 61 L. Ed. 1317; In re Louisville, 231 U. S. 639, 58 L. Ed. 413; Williams v. Hayti, 184 S. W. (Mo.) 470; Ex parte Young, 209 U. S. 123, 52 L. Ed. 714; In re Englehard & Sons Co., 231 U. S. 646, 58 L. Ed. 416; Railway v. Gill, 156 U. S. 649, 39 L. Ed. 567; Railway v. Minnesota, 134 U. S. 418, 33 L. Ed. 970; Railway Co. v. Railroad Commission of Alabama, 161 Fed. 972. (3) Defendant railroad elected to test, once and for all, the validity of all the rates in one proceeding by the remedy of injunction and is bound by the result of that election. Authorities above. (4) Defendant railroad, by the proceedings it instituted to enjoin the enforcement of each and every statutory rate, is estopped to deny that their validity was adjudicated. Same authorities.

BLAIR, J.—This action was begun to recover freight overcharges alleged to have been exacted by appellant on various shipments of apples in October and November, 1911. The petition contains thirty-nine counts. These are alike except as to date, place and amount, and the questions presented under the several counts are identical. The cause was referred, judgment recommended and entered for the several overcharges alleged to have been exacted, and this appeal was duly perfected therefrom.

The contentions of appellant are (1) that the action was for the penalty under Section 3248, Revised Statutes 1909, and that since no judgment for the penalty

was warranted the judgment should have been for defendant; and (2) that the court erred in refusing to permit appellant to introduce evidence to show that the rate prescribed by the Maximum Freight Rate Law of 1907 was confiscatory at the time the shipments were made in 1911.

I. Each count of the petition alleges the date, place of origin, destination and weight of the shipment forming the basis of the count and also alleges the maximum of freight permitted to be charged by the terms of the statute (Acts of 1907), sets forth the freight actually exacted by appellant and points out the difference between the two rates. It is further alleged that appellant, in 1907, obtained an order in the Federal court enjoining the Railroad Commission, the Attorney General and three representative shippers from putting in force the maximum rates under the Act of 1907; and that this injunction remained in force until February 6, 1914, at which time the injunction was dissolved; and that appellant refused and still refuses to pay to respondent the excess over the legal rate.

Pleading:
Overcharge
and Penalty.

The prayer in each count is for judgment for the difference between the statutory maximum rate and the sum exacted by appellant and "that the same be trebled as provided by Section 3248, Revised Statutes 1909," and for interest and costs and other proper relief.

It is argued that the action is under the penalty section of the statute; that the section superseded the common law remedy; that the pendency of the injunction in the rate cases in the Federal court superseded the penalty section as a whole and that respondent neither stated nor had any cause of action. In White v. Delano, 270 Mo. 16, substantially the same contentions made in this case were considered. It was held in that case that the penalties under Section 3248, supra, were superseded, but that the right to recover the actual overcharges was not affected by the injunction; that the

overcharges were not *damnum absque injuria* and that a judgment must be directed for the amount of the overcharge. This was in accord, also, with the decision in State ex rel. Barker v. C. & A. R. R. Co., 265 Mo. 646.

The general rule is that penalties provided for the violation of rate acts are "not a necessary or inseparable part of the acts, without which they would not have been passed" and a recovery can be had if the act, stripped of its penalty features, leaves a cause of action. [Wilcox v. Gas Co., 212 U. S. 1. c. 53, 54; Grenada Lumber Co. v. Mississippi, 217 U. S. 1. c. 443; Oklahoma Operating Co. v. Love, 251 U. S. 1. c. 331.] The cases cited do not, in our opinion, decide anything contrary to the holding in the case of White v. Delano. Further, the petition states facts sufficient to bring it within the doctrine of the right of restitution of that of which one has been deprived by a judgment or decree which is subsequently reversed, as applied to excessive rate charges by the Supreme Court of the United States in Arkadelphia Co. v. Ry. Co., 249 U. S. 1. c. 145, 146. That the petition asks judgment for the penalty is not an answer. It states facts sufficient to warrant the relief granted, and the efficacy of these allegations is not destroyed because the prayer is for more than the stated facts justify.

II.   Appellant also contends that the trial court erred in refusing to permit it "to introduce evidence to show that the rate prescribed by the Maximum Freight Rate Law of 1907 was confiscatory at the time the shipments were made in 1911."

Confiscatory Rate.

Appellant offered to show that the rate upon the particular commodity involved was confiscatory, and that conditions had changed between 1909 and 1911 by reason of increased cost of labor and material and other expenses. The referee and trial court excluded the offered evidence because of their view that appellant was precluded from raising the question of the confis-

catory character of the rate for the reason that the shipments involved here were, in their opinion, covered and included by the decision in the Missouri Rate Cases, 230 U. S. 474.

Appellant was one of the plaintiffs in the Missouri Rate Cases which were instituted to enjoin the enforcement of the rate statutes of 1905 and (by supplemental bill) of 1907. The taking of the evidence in these cases was finished in 1908 and the decree in the circuit court was rendered April 1, 1909. That decree enjoined the enforcement of the acts mentioned in so far as they affected freight rates. On appeal to the Supreme Court of the United States the decree of the lower court was reversed in June, 1913, and the lower court entered its dismissal of the bills in February, 1914. In this case appellant contends it has the right to litigate the validity of the rate which it charged and collected on apples in October and November, 1911, after the decree of the circuit court in the Missouri Rate Cases and prior to the decision of the Supreme Court of the United States on appeal therein. Respondent contends to the contrary, and the trial court held with it. The mandate of the Supreme Court ordered the dismissal of this appellant's bill in the Rate Cases "without prejudice" (230 U. S. l. c. 509) and the order of dismissal in the circuit court followed the mandate. Respondent contends the decision in Missouri v. C., B. & Q. Railroad, 241 U. S. 533, determines the question in this case in its favor, and appellant takes the contrary view. Counsel differ concerning what was actually decided in that case, and this difference arises from conflicting constructions of the language of the opinion. It is therefore necessary to present what the court said and the facts then held in judgment. The court outlined the case as follows:

" By original action here brought the State sues to recover a sum of money for passenger fares in excess of the rate established by law paid by its officers when

traveling within the State on state business. Answering, the railroad alleges among other defenses that the rates fixed by law were so low as to be confiscatory and hence repugnant to the Constitution of the United States. The matter for decision arises on a motion on behalf of the State to strike out this defense on the ground that the right to assert it is barred by a decree of this court establishing that the rates fixed by the state law were lawful and not confiscatory—a decree the conclusive effect of which, it is asserted, the railroad company is estopped from denying.

" The case as made by the pleadings and by the record in which the decree relied on was rendered, of which we take judicial notice, is this: in April, 1905, by law Missouri established certain freight rates. Almost at once the defendant company and others filed their bills in the Circuit Court of the United States for the Western District of Missouri against the State Board of Warehouse Commissioners, the Attorney-General of the State and certain shippers alleged to be representative, to enjoin the carrying out of the rate-fixing law on the ground that to enforce the rates which it fixed would result in confiscation and a taking of the property of the railroads in violation of the Constitution. An injunction was granted prohibting the carrying into effect of the rate law. While these suits were pending the State by law fixed a passenger rate and, repealing the freight law which had been enjoined, enacted another, and by supplemental bills both these laws were assailed on the grounds upon which the other law had been attacked and injunctions were awarded restraining their enforcement. After much testimony offered on the issue of confiscation, the court permanently enjoined the enforcement of the state statutes. On review in this court, as to the railroad now before us and others, this conclusion was held to be erroneous and the decree which was entered here reversed and remanded the case with directions to dismiss the bill without prejudice. [Missouri Rate Cases, 230 U. S. 474, 509.] "

285 Mo.—35

The .applicable principles were, in substance, stated to be these: (1) That statutory rates must not be confiscatory. (2) That, though the State may not be sued, an individual may be enjoined from, for instance, taking property unlawfully, even though such individual be a state officer. (3) That the power to fix rates is accompanied by a duty to provide an opportunity to test their validity. (4) That any officer of a State having any power to enforce a rate statute may be made defendant in a proceeding to test the validity of the rates as a unit. The court then proceeds:

" 2. While it is true that the comprehensive right thus recognized was broader and more efficacious than would be the right of a railroad merely to resist in each particular case an individual effort to enforce a single rate fixed by law (see Ex parte Young, 209 U. S. 123), it is true also that the recognized broader right was not, unless it was availed of, exclusive of the latter and narrower one, that is, the right to resist separate attempts to enforce a rate. [St. Louis & San Francisco Ry. v. Gill, 156 U. S. 649.] This principle was but a recognition of the fact that the broader right to invoke a complete remedy to enjoin the law and thus prevent the enforcement of the rates, did not take away the narrower right of a railroad to stand upon the defensive and merely resist the attempt to enforce the rate in each particular case because of its confiscatory character. One right was not destructive of the other, because there was freedom to elect which of the two would be pursued.

"3. Resulting from the principles just stated, recognizing that the operation of a decree enjoining the giving effect to a rate law because of its alleged confiscatory character differed materially, both as to the public interest and that of the railroad, from the consequences which would arise from a mere decree rejecting the complaint of a person as to an individual and consummated grievance based on the claim that an illegal rate had been charged, it came to pass that a form of decree came to be applied in rate cases to meet and provide for this

difference. In other words, in a rate case where an assertion of confiscation was not upheld because of the weakness of the facts supporting it, the practice came to be that the decree rejecting the claim and giving effect to the statute was, where it was deemed the situation justified it, qualified as 'without prejudice,' not to leave open the controversy as to the period with which the decree dealt and which it concluded, but in order not to prejudice rights of property in the future, if from future operation and changed conditions arising in such future it resulted that there was confiscation. And the same limitation arising from a solicitude not to unduly restrain in the future the operation of the law came to be applied where the asserted confiscation was held to be established. In other words, the decree enjoining the enforcement of the statute in that case was also qualified as without prejudice to the enforcement of the statute in the future if a change in conditions arose. The doctrine in the first aspect nowhere finds a more lucid statement than the one made on behalf of the court by Mr. Justice MOODY in Knoxville v. Knoxville Water Co., 212 U. S. 1. It has since been repeatedly applied in language which in the completest way makes the meaning of the limitation without prejudice in such a case clear, and leaves no ground for any dispute whatever on the subject. [Willcox v. Consolidated Gas Co., 212 U. S. 19; Northern Pacific Ry. v. North Dakota, 216 U. S. 579; Louisville v. Cumberland Tel. & Tel. Co., 225 U. S. 430; Missouri Rate Cases, 230 U. S. 474; Des Moines Gas Co. v. Des Moines, 238 U. S. 153.] A complete illustration of the operation of the qualification is afforded by the North Dakota case, just cited, since in that case as a result of the qualification 'without prejudice' the case was subsequently reopened and upon a consideration of new conditions arising in such future period a different result followed from that which had been previously reached. [Nor. Pac. Ry. v. North Dakota, 236 U. S. 585.] As to the second aspect, that, is the significance of the limitation without prejudice as applied to a decree which enjoined

the rates as confiscatory, the meaning of the reservation as we have stated it was in express terms, through an abundance of precaution, defined and stated in the opinion in the Missouri Rate Cases, 230 U. S. 474, 508.

"Let us test the merit of the respective contentions by these propositions.

"(a) It is insisted that the right obtains to assert as against the individual suit of the State the existence of the confiscation for the very period covered by the previous finding that there was a failure to establish the confiscation, because the reservation without prejudice which was made in that decree leaves the whole subject open for a renewed attack as to individuals and indeed by general complaint as to the unconstitutionality of the law as a whole. But this proposition simply disregards the foundation upon which such a reservation came to be applied, as we have just pointed out, in cases involving an assault upon the present and future operation of a law fixing rates. In other words, the contention but accepts the doctrine previously announced and yet repudiates the cases by which that doctrine was established by affixing a meaning to the reservation 'without prejudice' as used in the cases wholly destructive of the sole object and purpose for which in those cases the reservation came to be applied. Again it is said, conceding that the limitation 'without prejudice' when applied to a rate case under the authorities has the significance which we have affixed to it, that meaning should only prevent the re-opening of the inquiry as to the period embraced by the testimony in the case and therefore should not be extended so as to prevent the re-opening from the time at least of the close of the testimony. This, it is said, must be the case since there might well be a change in conditions between the time when the proof in a case was taken and the entry of the final decree. But this contention again disregards the doctrine upon which, as we have pointed out, the reservation in rate-making cases came to be applied. In

other words, it treats the reservation 'without preju-dice' as looking backward and overthrowing that which was concluded by the decree, instead of considering it in its true light, that is, as looking forward to the future and providing for conditions which might then arise.

"(b) Conceding for the argument's sake the con-trolling influence of what we have said, nevertheless the contention is that the previous decree is here inapplica-ble since the State was not a party to the litigation in which the decree was entered, indeed, could not have been made a party without its consent. But once more the argument proceeds upon a disregard of the previous cases upon the authority of which the right was exer-cised to obtain on the charge of confiscation the exer-tion of judicial authority to stay or suspend every ves-tige of power asserted by the state statute fixing rates until the controversy was determined. In other words, the proposition ignores the doctrine settled by the pre-vious cases that there inhered in, and went along with, the rate-making power a duty on the party of the State to afford means for judicially deciding a question of confiscation when asserted. It is true, as we have pre-viously pointed out, that because there was a right on the part of a railroad to sue to prevent the execution of the state power manifested in the rate-making law, it did not follow that the railroad was deprived of its right to resist the enforcement of the law by way of defense when an attempt was made to enforce the law against it. But it is true also as we have seen, that the right to elect between the two was undoubted—an election the potency of which was pointed out in the Gill case, supra, and was moreover in the clearest way fully expounded in the Young Case, supra, page 166. This being true, it is obvious that the question here is not how far the de-cree relied upon was binding upon parties who were not technical defendants, but how far is it binding upon the railroad. In other words, it is whether when there has been an election to obtain a remedy by proceedings

against particular defendants comprehensive enough to restrain the giving effect of every vestige of state power which was embraced in the authority exerted by the State in passing the rate-making law, it can now be said by the railroad, in order to frustrate or limit the decree rendered in the case, that the restraint did not operate as against the rate-making power so far as the interest of the State is concerned, because the State was not a party. The right to restrain the whole power having been enjoyed for the purpose of the complaint as to confiscation which was made, the contrary cannot be asserted in order to escape the effect of the decree holding that such complaint was erroneously made. In last analysis the contention comes simply to asserting that the settled rule of Ex parte Young, 209 U. S. 123, and the cases which preceded it, was wrong and there was no right to restrain the complete enforcement of the rate law without the presence of the State as a technical party. And the cogency of this consideration is made quite clear by bearing in mind as expressly pointed out in the Young Case, supra, page 166 that the power which the court possessed, by virtue of the bringing of the suit at the instance of the railroad, to enjoin and suspend the whole rate-making law comprehensively included the right to stay proceedings brought in other courts which would have tended to set aside or frustrate the authority to completely exercise the jurisdiction acquired.

"As it results from what we have said that in our opinion by the application of the most elementary principles of estoppel the railroad may not be heard to disavow what it asserted in order to secure the suspension of the rate law during the suit, it follows that it was without right in this case to assert the defense of confiscation, and the motion to strike out the same must therefore prevail.

"As the view which we have taken of the controversy has not rendered it necessary to consider whether

Monarch Vinegar Works v. Burlington Railroad.

in any event the suit was not a class suit binding upon all, into that subject we have not entered. Additionally, we have not considered and express no opinion upon the arguments dealing with questions of the ultimate right to recover, in the absence of a condition to that effect imposed when the injunction was issued, in view of the terms of the injunction, bond, etc. etc.

"The motion to strike out the defense of confiscation from the answer is granted."

It may be that the language quoted leaves room for the conflicting views entertained by counsel in the case at bar concerning its meaning. An understanding of the issue actually made in that case clarifies the language and seems to leave no room for doubt. In the case before the Supreme Court of the United States the bill of complaint sought the recovery of overcharges during the years 1909, 1910, 1911, 1912 and 1913. The plea that the rate statute was confiscatory was general and was applicable to all the overcharges the recovery of which was sought. The motion to strike out this plea was general, and the opinion shows that it was stricken from the answer, not qualifiedly, but entirely. With these facts in view, it is clear the Supreme Court was dealing with the plea, not only as against overcharges (if any) antedating the decree of the circuit court, but also those during the period succeeding that decree and preceding the decree in the Supreme Court on appeal. The plea was, as in this case, directed to overcharges in 1911, as well as in other years. When the opinion is read in the light of these facts the asserted doubt concerning its meaning is dispelled and it becomes full authority for the action of the trial court in sustaining the ruling of the referee excluding the evidence tendered to show that the statutory rates were confiscatory in character in 1911. It also answers other questions raised by appellant which depend upon a different construction of the opinion. The judgment is affirmed. All concur, except *Woodson, J.*, not sitting.