227 S.W.2d 764 (1950)
ST. LOUIS 221 CLUB
v.
MELBOURNE HOTEL CORPORATION et al.
No. 27792.
St. Louis Court of Appeals. Missouri.
February 21, 1950.
Motion for Rehearing or to Modify Opinion Denied March 24, 1950.
*766 Jones, Hocker, Gladney & Grand, St. Louis, Benjamin Roth, St. Louis, for appellants.
Joseph Boxerman, St. Louis, Joseph Nessenfeld, St. Louis, for respondent.
HUGHES, Judge.
This is an action in equity seeking the reformation of a written lease contract, with a prayer in the petition for a temporary injunction pending the final adjudication of the case.
In 1934 St. Louis 221 Club, a laundrymen's association or club, which had been in existence for about forty years at the time of the trial, became a tenant under written lease of the Melbourne Hotel Corporation. Under the terms of that lease the club rented rooms 212, 214, 221, 222 and 223 for a term of five years, at a rental of $100 per month. That lease expired in 1939, but the club continued as a tenant of the hotel without a written lease and continued paying a rental of $100 per month. There was no specification in that lease, nor in the lease here in controversy, to which reference will later be made, of what, if any, services were to be furnished the club other than the possession and use of the rooms rented. However, the hotel during all of the time after 1934, and up to the present time, did furnish the club with the following: daily maid service, janitor service, room telephone service, soap, towels, hot and cold water, electric light, air cooling, cleaning and decorating, maintenance of plumbing and maintenance of electric sign at entrance to the rented rooms.
In the latter part of December, 1945, the manager of the hotel notified the secretary of the club that it was not paying enough rent and would have to give up the rooms. Thereupon Mr. Weil, Mr. Lees and Mr. Morgan, officers of the club, had a meeting with Mr. Florida, who owned practically all of the capital stock of the hotel corporation, and negotiations were entered into looking toward a new written lease, which resulted in an agreement that the club would give up rooms 212 and 214, and the hotel would rent to it rooms 221, 222 and 223, at the same rental of $100 per month for a term of five years with the option to the club to renew the lease for a further term of five years. The same parties again met on January 1, 1946, to execute the new lease which had been prepared by or under the directions of Mr. Florida.
The three officers of the club testified that in the negotiations for this lease Mr. Florida told them that the club was to have the same services as it had been getting except that those services would be improved because of extensive repairs and improvements *767 being made to the hotel. To the contrary, Mr. Florida testified that nothing was said about anything except that the club would give up the two rooms and he would lease them the three rooms for $100 a month.
The new lease was signed and is silent as to what, if any, service the hotel would give the club other than the use and occupancy of rooms 221, 222 and 223. However, the hotel continued to give the services as theretofore, to wit, daily maid service, janitor service, room telephone service, soap, towels, hot and cold water, ice water, electric light, air cooling, cleaning and decorating, maintenance of plumbing and maintenance of electric sign at entrance to the rented rooms. The tenancy thus continued uninterrupted until June 15, 1948, when the club received from the managing director of the Melbourne Hotel Corporation the following letter:
"June 15, 1948.
"St. Louis `221' Club,
"Melbourne Hotel,
"3601 Lindell Blvd.,
"St. Louis, Missouri.
 "Attention Mr. Goldrick
"Dear Mr. Goldrick:
"In accordance with my conversation with you yesterday, this letter will further explain that we will be unable to continue to furnish your quarters with maid or porter service, towels, soap, etc., effective July 1st, 1948. We understand that you have been receiving these services although there is no stipulation in your lease calling for this type of service, and since our company has taken over this property, and having made a survey on our costs, we cannot afford to continue giving this type of service.
"We regret very much that it is necessary for us to take this action and will appreciate your notifying your Board.
 "Yours very truly,
"(Signed) E. A. Leach
"Managing Director,
"Melbourne Hotel Corporation."
This suit followed the receipt of that letter.
There is some complication as to the pleadings and the parties to the suit at the time of the trial of the case. This is occasioned by the fact that the Melbourne Hotel Corporation sold the hotel building on January 5, 1948, to a partnership composed of Albert Pick, J. Edgar Moss and Harold J. McCormick, d/b/a Highland Hotel. On March 10, 1949, at the close of the trial of the case the record shows as follows: "Thereafter, on the 10th day of March, 1949, by consent, Albert Pick, J. Edgar Moss, Harold J. McCormick, d/b/a Highland Hotel, joined as additional parties defendant and caption of petition amended accordingly. Jones, Hocker, Gladney & Grand and Benjamin Roth enter their appearance as attorneys for said new parties defendant. By leave, said new parties defendant adopt answer heretofore filed as their answer. By consent, temporary injunction heretofore granted to stand in full force and effect as against said new defendants. Depositions for defendants filed."
The case was taken as submitted, and thereafter, on March 30, 1949, the court entered its decree. It appears that in October, 1948, the Melbourne Hotel Corporation was dissolved, yet the case proceeded to a final determination as against the Melbourne Hotel Corporation and the partnership. We think this was authorized by Section 22(c) of the Civil Code, Mo.R. S.A. § 847.22(c) which is as follows: "In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party. Service of the motion shall be made as provided in sub-section (a) of this section."
The joining of the individual defendants was by consent, and no motion to join them was necessary.
The decree entered by the trial court is as follows:
"1. That the said lease dated January 1st, 1946, by and between Melbourne Hotel Corporation as lessor and St. Louis 221 Club as lessee be, and the same is hereby reformed so as to provide that the lessor in said lease, its successors and assigns agree to furnish to plaintiff during the entire *768 term of said lease the following services, to-wit: daily maid service, janitor service, room telephone service, soap, towels, hot and cold water, ice water, electric light, air cooling, cleaning and decorating, maintenance of plumbing and maintenance of electric sign at entrance to the rented rooms.
"2. That in and by said lease as so reformed defendant Melbourne Hotel Corporation, as lessor, leased to plaintiff the rooms therein mentioned and agreed to furnish as part thereof and incident thereto the services hereinabove set forth and listed; and that defendants are bound to continue to furnish to plaintiff during the term of said lease the said services.
"3. That defendants be and they are hereby enjoined and restrained from discontinuing the services hereinabove set forth during the term of said lease.
"That the costs of this action be assessed against the defendants."
After unavailing motion for a new trial the partnership defendants appeal.
The primary relief sought by the plaintiff-respondent in its petition, and awarded to it by the trial court's decree, was the reformation of a lease contract in order that it express the true intention and agreement between the parties. "Courts of equity have from time immemorial exercised power to reform written instruments so as to make them speak the real agreements made between the parties in cases in which by the mistake or misprision of the scrivener the writing fails to do so, and it will exercise this power not only as between the original parties, but as to those claiming under them in privity, such as personal representatives, heirs, assigns, grantees, judgment creditors, or purchasers from them with notice of the facts." Sicher v. Rambousek, 193 Mo. 113, 129, 91 S.W. 68, 72; Leitensdorfer v. Delphy, 15 Mo. 160, 161, 55 Am.Dec. 137. A lease which fails to express the intention of the parties should be reformed. Smith v. Smith, 289 Mo. 405, 233 S.W. 183. The rule is the same as to a deed or any other written contract. General Refractories Co. v. Howard, 328 Mo. 1139, 44 S.W.2d 65; Brumley v. McCormack, Mo.App., 17 S.W.2d 597.
Not only did the overwhelming weight of the evidence show that the actual agreement between the parties was that the hotel would furnish the services that it had furnished from the beginning of the club's tenancy in 1934, but such is conceded by the appellants in their statement of facts contained in their brief as follows: "The appellants will not, in this appeal, press their contention that the actual agreement is set out in the written lease. The oral evidence on this point was heard by the trial judge, and his decision should not be disturbed here."
We do not agree with appellants' argument to the effect that, because of the injunctive relief prayed for and that awarded to plaintiff, the cause of action was for specific performance of a contract. It remained an action for the reformation of a written lease contract in order to make it speak the actual contract as contemplated and intended by both parties. The decree went beyond the petition, which had for its purpose the reformation of the lease contract, with a prayer only for a temporary injunction to maintain the status quo pending the final determination of the case. No permanent injunction was prayed for, and, as we will point out, a permanent injunction should not have been superadded to a proper decree of reformation.
In determining whether the written lease expressed the actual agreement it was the duty of the trial court to look not only to the wording of the written lease as signed by the parties, but also to the relationship of the parties, the subject matter of the contract, the usages of the business, the surrounding facts and circumstances attending the execution of the contract and its interpretation by the parties. Paisley v. Lucas, 346 Mo. 827, 143 S.W.2d 262, 268. An apt maxim of the common law was that "He who considers merely the letter of an instrument goes but skin deep into its meaning."
The subject matter of this contract was the rental of rooms in a hotel as a meeting place for the club members, and this object *769 would not be accomplished by having the use of the rooms without the services heretofore enumerated; the facts and circumstances, as shown by the evidence, were that the hotel agreed to continue those services on condition that the club surrender two of the rooms it had occupied from the beginning of the tenancy in 1934; the interpretation placed on the contract by the parties was that the same or better services would be given the tenant than it had enjoyed theretofore.
The omission in the lease contract of any reference to servicing the rented rooms was clearly due to the inadvertence and mutual mistake of both parties. Both parties knew that the rooms were being serviced by the hotel and they recognized such servicing as a part of their contract from the beginning of the club's tenancy, and from January 5th to June 15th, after the individual defendants bought the hotel. There was no difference of opinion whatever about the servicing until the hotel owners became dissatisfied in June, 1948, with the bargain, and then sought to escape the binding effect of the actual contract which had been entered into.
It may have been that by reason of the prevailing increases in rental values, including hotel accommodations, and the general increase in the cost of labor to maintain a hotel, that the contract proved not to be renumerative to the hotel. However that may be, in the absence of fraud, parties are as much bound by a hard contract as an easy one, and there is no question of fraud involved in this case.
Appellants contend that they were purchasers of the hotel without notice other than the written lease. The evidence on which this point is based was given by Edmund A. Leach, the managing director of the Melbourne Hotel, and Thomas P. Florida, to the effect that this lease together with written leases to other room renters, was shown to Pick, Moss and McCormick when they bought the hotel on January 5, 1948, and they were told that there were no outstanding commitments other than the written leases, but nothing was said about what, if any, services or whether any services whatsoever were to be given the tenants, such as the club contends for in this action and hereinabove enumerated. Strange to say, if these purchasers of the hotel did not know that the services went with the lease, neither of them took the witness stand to so testify. This is persuasive evidence that they did know that the lease carried with it the services which are the ordinary and usual services expected by a renter of hotel rooms. But regardless of a presumption that their testimony if given would have been against their present claim of being innocent purchasers is the fact that they did know that the club was a tenant and was in the occupancy of the three rooms, and this would at least have put them upon inquiry as to who was furnishing the services. The law is well settled that one who has notice of a fact which ought to have put him on inquiry, and which he might have discovered by using due diligence, cannot claim as a purchaser without notice. Sicher v. Rambousek, supra.
As heretofore stated, the petition merely sought a temporary injunction pending the final determination of the case. After the filing of the suit and on September 8, 1948, the temporary injunction was granted, and on March 10, 1949, when these individual defendants (the appellants) became parties defendant, by their consent the temporary injunction was to stand in effect. However, when the final decree was entered the temporary injunction had served its full purpose and should have been dissolved. Ordinarily the sole object of a temporary injunction is to maintain the existing condition or status until the controversy is decided. State on Inf. of McKittrick v. American Ins. Co., 351 Mo. 392, 173 S.W.2d 51.
The remedy by injunction is to be applied with the utmost caution and exercised with great discretion, and only when necessity requires it. Godefroy Mfg. Co. v. Lady Lennox Co., Mo.App., 134 S.W. 2d 140. Injunction is never granted to allay the fears and apprehensions of any one, but only for an actual or threatened wrong. City of Washington v. Mueller, Mo.App., 218 S.W.2d 801. A mere threat which may *770 or may not be carried into effect is not sufficient to warrant the granting of an injunction. Eckhardt v. Bock, Mo.App., 159 S.W.2d 395. The applicants must show the court that the acts against which they ask protection are not only threatened but will in all probability be committed to their injury. Commission Row Club v. Lambert, Mo.App., 161 S.W.2d 732.
A misunderstanding between the parties to the lease contract developed in June, 1948, and the hotel management then labored under the erroneous idea that regardless of the actual lease agreement they had a right to stand upon the strict letter of the written lease, and then wrote the letter to that effect on June 15, 1948. The letter is couched in polite words and is more of an assertion of what the writer conceived to be the rights of the hotel corporation than a threat. The letter does not assume a belligerent attitude indicating an intention to do a wrongful act. There is no reason to believe that when the written lease is reformed to accord with the actual rent agreement that the hotel owners as well as the club will not abide by their contract. If after a court of equity has reformed the contract so that there can be no misunderstanding as to its meaning, and either party refuses to abide by the contract as reformed, the other party has a remedy. Hence, mandatory injunction does not appear to be a necessity.
The findings and decree of the trial court should be and are affirmed and approved as the decree of this court, with the following modification, to wit: that paragraph "3" of said decree be stricken therefrom, and the following paragraph be placed in lieu thereof, to wit: "3. Injunction is denied, and the temporary injunction is dissolved."
It is so ordered.
ANDERSON, P. J., and McCULLEN, J., concur.
On Respondent's Motion for Rehearing, or, in Alternative, to Modify.
HUGHES, Judge.
Plaintiff-respondent seeks a rehearing or a modification of our opinion because, although we have given it the relief to which it was entitled, that is, reformed the contract to express the intention of the parties, we have not gone further and commanded obedience to the contract as reformed by injunction. The opinion fully covers the reasons why we are of the opinion that the extraordinary writ of injunction should not be invoked, and cites cases fully supporting our views.
Both the pleadings and the trial of the case are persuasive that the parties in perfect good faith placed conflicting construction on their rights under the contract. In the petition plaintiff says that there is a controversy between the parties with respect to the construction, meaning and effect of the lease agreement and the written lease. We have resolved that controversy in plaintiff's favor. We reiterate, after considering all the facts and circumstances which brought forth this litigation, that "There is no reason to believe that when the written lease is reformed to accord with the actual rent agreement that the hotel owners as well as the club will not abide by their contract."
It is true, as respondent says, that the court is not bound in an equity case by the prayer of the petition. However, the prayer of the petition is not to be entirely ignored. The Code, Laws 1943, p. 369, Section 36, Mo.R.S.A. § 847.36, requires that the petition contain a demand for judgment for the relief desired. Foster v. Pettijohn, 358 Mo. 84, 213 S.W.2d 487. And even before the adoption of our present Code the Supreme Court in the case of O'Donnell v. Baltimore & O. R. Co., 324 Mo. 1097, 26 S.W.2d 929, loc. cit. 935, said"It is true our courts have often said the prayer is no part of the petition and that the substantive averments of fact therein will not be destroyed by the prayer, Monarch Vinegar Works v. Chicago, B. & Q. R. Co., 285 Mo. 537, 543, 226 S.W. 546, 547; Baldridge v. Ryan, Mo.App., 260 S.W. 536, 538. But when the allegations of fact are ambiguous or susceptible of two constructions, the prayer may be looked to for the purpose of ascertaining the intention of the pleader, 31 Cyc. pp. 83, 111; Cornet v. Cornet, 248 Mo. 184, 211, 154 *771 S.W. 121, 129; Peak v. Peak, Mo.Sup. Div. 1, 181 S.W. 394, 395; State ex rel. Brinkman v. McElhinney, Mo.Sup. banc, 216 S.W. 521, 524; Mayberry v. Clark, 317 Mo. 442, 448, 297 S.W. 39, 41. And the rule is familiar that although the answer in a law action tenders equitable defenses it will not convert the proceeding into a suit in equity unless equitable relief is affirmatively prayed, thus making the prayer determinative of the whole nature of the cause of action, the other allegations permitting. Jacobs v. Waldron, 317 Mo. 1133, 1137, 298 S.W. 773, 774."
The petition asked only for a temporary injunction pending the final determination of the case. The case has now been determined and the temporary injunction has served its purpose and should be dissolved. For the reasons assigned in our opinion a permanent injunction should not be granted.
The decree of the circuit court, which we have modified and adopted, provides "that the costs of this action be assessed against the defendants." That means the costs of the litigation as provided for by statute and which the circuit clerk will ministerially tax, together with any items which require judicial action and are specifically ordered by the court to be taxed as costs. It does not include and could not include the cost of the transcript on appeal. Such cost cannot be taxed until the final determination by the appellate court. Our judgment does not become final for all purposes until the motion for rehearing is ruled, and for thirty days thereafter in which time the case could be transferred to the Supreme Court in accordance with Rule 2.06 of the Rules of the Supreme Court. Consequently, it is the practice of this court to withhold ruling on a motion for cost of transcript until thirty days after denying a rehearing, unless the losing party advises the court that no application for transfer is to be made and requests that our mandate be sent to the trial court.
The motion for rehearing or to modify opinion is overruled.
ANDERSON, P. J., and McCULLEN, J., concur.