STATE OF MISSOURI on the Information of ROY McKITTRICK, Attorney General, Relator, v. AMERICAN INSURANCE COMPANY, a Corporation.—No. 36724.—173 S. W. (2d) 51.

Court en Banc, July 6, 1943.

*Roy McKittrick, Max Wasserman, George W. Crowley* and *Gaylord L. Wilkins* for informant.

*Williams, Nelson & English, D. A. Murphy* and *Morrison, Nugent, Berger & Johns* for respondents.

DOUGLAS, J.—The question for decision is whether a temporary injunction should be issued to restrain respondents from collecting rates in excess of a rate level ordered in 1922 pending the determination of a quo warranto proceeding to oust them.

In May, 1939, the Attorney General, as relator, filed this original action in quo warranto in this court to oust respondents, a number of fire and windstorm insurance companies, from doing business in this

State. Pleas to the jurisdiction were first and separately disposed of in favor of the information. 346 Mo. 269, 140 S. W. (2d) 36. Thereafter in December, 1940, a special commissioner was appointed who has since been engaged in taking testimony on the part of relator.

On March 30, 1943, the relator filed an ancillary petition for a temporary injunction pending the final outcome of the quo warranto proceeding. Respondents filed a demurrer to the petition on which we heard arguments and have now before us for decision.

Briefly we repeat such facts of this prolonged litigation as are necessary to determine the question for decision. In October, 1922, the superintendent of insurance ordered a ten per cent reduction of rates on fire and windstorm insurance. This order was resisted by litigation lasting into 1929 when the reduction was sustained. Almost immediately respondents notified the superintendent that rates would be increased sixteen and two-thirds per cent over the reduced level and requested his approval of the increase. The superintendent refused his approval and more litigation ensued, these respondents obtaining injunctions in the United States District Court against the superintendent, and authority to collect the increased rates under an impounding order. On May 18, 1935, while the injunctions were pending [52] the superintendent of insurance entered into a compromise settlement agreement by which four-fifths of the rate increase was approved. After this agreement was entered into new rates were filed and approved effective November 11, 1935, and were thereafter collected.

The information in quo warranto is based, for one of its grounds, on the allegation the agreement was procured by bribery so that the rates based thereon and in excess of the 1922 order are illegal.

Relator's ancillary petition for a temporary injunction states that the rates being collected in excess of the original 1922 order (90% level) are the result of such bribery and are illegal and void because they are based on the agreement. He asks respondents be restrained from collecting such excess during the pendency of the quo warranto proceeding.

Relator argues he is entitled to a temporary injunction in aid of the quo warranto in order to preserve the status quo of the parties. He asserts that the status quo which should be preserved is "the last actual, peaceable, noncontested condition which preceded the pending controversy", citing High, Injunctions, 4th Ed., sec. 5a. Under this definition of status quo he contends that the last noncontested condition so far as rates are concerned is the rate level ordered in 1922 and that respondents should be restrained from collecting any amount exceeding the 1922 level. In other words the status quo he seeks to preserve is that which existed in 1922. We cannot agree with this contention.

Ordinarily, the sole object of a temporary injunction is to preserve the subject of the controversy in the condition in which it is when the order is made, to maintain the existing condition or status until the controversy is decided.

Originally, a temporary injunction was merely preventive, it could not undo what was already done. As a result, when a party was threatened with an injunction he sometimes would "race with the law" to accomplish his end before the hand of the court could restrain him. It was this practice which gave rise to the statement found in High on which relator relies. To support the statement High cites the case of Fredericks v. Huber, 180 Pa. St. 572, 37 Atl. 90, which turned on the question whether a temporary injunction should issue. After stating the office of a temporary injunction "is not to subvert, but to maintain the existing status, until the merits of the controversy can be fully heard and determined," the opinion in that case observed that in exceptional cases it was necessary to make even a temporary injunction mandatory because of improper practices condemned in certain cases therein cited where parties had undertaken to settle controversies by force instead of appealing to the courts. For example, in Cooke v. Boynton, 135 Pa. St. 102, 19 Atl. 944, because of a dispute over royalties under a coal lease the lessor repeatedly tore up a tramway used by lessee in shipping his coal. Lessee obtained a temporary injunction. The writ was served just as defendant had finished demolishing the tramway for the third time. The lower court dissolved the temporary injunction for the reason the act sought to be restrained had already been done. On appeal the court said: "As far as it is possible upon a preliminary injunction, we will restore the status quo as it existed prior to the acts of the defendants."

With such practices in mind the author of the opinion in the Fredericks case concluded: "Equity regards the substance rather than the form of things, and will not allow itself to be baffled by a wrongful change while its aid is being invoked. The modern cases, therefore, have established the rule that the status quo which will be preserved by preliminary injunction is the last actual, peaceable, noncontested status which preceded the pending controversy, and equity will not permit a wrongdoer to shelter himself behind a suddenly or secretly changed status, though he succeeded in making the change before the chancellor's hand actually reached him." This rule is not applicable in this case because such a condition does not exist here. No sudden or secret change has been made or is threatened.

To comply with relator's demand would subvert rather than maintain the existing status. The present status is the subject matter of the controversy, not the status as it existed in 1922. In State ex rel. Barker v. Assurance Company, 251 Mo. 278, 158 S. W. 640, we held that this court is authorized to issue a temporary injunction ancillary

to a quo warranto proceeding to preserve the status quo in order that full force and effect may be given to such judgment as would be rendered in the quo warranto proceeding. [53] There we pointed out the purpose of a temporary injunction is to preserve the subject matter of the controversy in its then condition.

One of the strongly controverted issues in the quo warranto turns on the legality of the present charge in excess of the 1922 rate level. Under the facts before us we may not anticipate the ultimate determination of this issue by granting the temporary injunction through a summary decision on this issue.

Support for the demurrer is claimed on additional grounds which we neither consider nor decide.

The demurrer is sustained and the ancillary petition for a temporary injunction is dismissed. All concur except *Gantt, J.,* absent.