Frank McGraw v. Hugh Montgomery and Kansas City, St. Louis and Chicago Railroad Company.—185 S. W. (2d) 309.

Kansas City Court of Appeals. December 9, 1944.

W. H. *Meschede* and *Charles M. Miller* for appellants.

*James & Bacon, W. T. Bellamy* and *Louis J. Rasse* for respondent.

242

DEW, J.—This is a suit against the Kansas City, St. Louis and Chicago Railroad Company and Hugh Montgomery, engineer, for the recovery of damages for alleged injuries to person and property of the respondent. The case grows out of a collision between the automobile of the respondent, which he was driving at the time in question, and a passenger train of the Alton Railroad Company, on April 9, 1942, in Marshall, Missouri. A trial was had before a jury and resulted in a verdict and judgment for respondent against both defendants. By the verdict and judgment respondent was awarded $4412.00 for personal injuries, $522.00 for loss of automobile and $771.00 physicians' and medical expenses, a total of $5705.00. Both defendants have appealed.

Under respondent's petition, proof and instructions his case was predicated on alleged negligent speed of the train in excess of the maximum as prescribed under ordinance of the city of Marshall, Missouri, alleged failure to give the statutory signals, and alleged negligence in failing to have a flagman at the crossing in question. Defendants each filed separate answers, consisting of general denials, plea of contributory negligence on the part of respondent, and defendant railroad company denied jurisdiction of the court by reason of its having been declared a bankrupt since the filing of the case.

Plaintiff's evidence tended to show as follows: Jefferson Street runs north and south in the city of Marshall, Missouri. The Alton railroad crosses Jefferson Street in a southeasterly and northwesterly direction. At the crossing in question there are three railroad tracks. The first track, as one approaches from the north, is a switch track; the next, or middle track, is known as the passing track; the south or third track is the main track. This crossing is located about six blocks from the public square and there is much travel over and across the same. At the crossing and on the north side thereof, a person looking to the right or west, without any obstruction from either track can see at least to the railroad station some 1000 feet distant. On the left-hand side of the crossing from this standpoint, the view of the track to the left or east is partially obstructed by a store and garage building,

which is located very close to the right-of-way of the railroad, beyond which building the track curves slightly northward.

Respondent's evidence further tended to show that respondent, county collector (presumably of Saline County, Missouri) a resident of Marshall, Missouri, and formerly superintendent of schools at Napton, Missouri, was on the date in question—April 9, 1942—about 37 years of age. On said date he was driving his 1941 Ford V-8 tudor automobile in a southerly direction on North Jefferson Street in said town of Marshall, and approaching the railroad crossing in question. It had been raining during the morning and it was misting at the time, the street and the crossing being still wet. Respondent's right front window was down two or three inches; the windshield wipers were operating and the visibility through the windshield and the windows was good. The respondent approached the crossing at fifteen or twenty miles an hour and then slowed down and finally came to a complete stop for from two to five seconds, with the front end of his automobile two to three feet north of the north track. He noticed a line of cars standing on the middle track with the end of the train, or caboose, located just over the west side of the pedestrian sidewalk on the west side of the crossing, which standing train obstructed his view of the main track as he looked to the west. This standing freight train extended to the depot, located about 1000 feet west of the crossing. Plaintiff had traveled this road frequently and was familiar with the crossing in question. He looked to the east and to the west and, hearing no bell, whistle, or horn, and there being no flagman present, and seeing no train approaching, plaintiff shifted his car to second gear and started across the crossing at a speed of from five to ten miles per hour until his front wheels were midway between the second and third tracks when, for the first time, he saw the east bound gas-electric train of two cars on said main track when, he said, he had no time to stop his car, the train being within twelve or fifteen feet of him, and no opportunity to put on his brakes or to get out of the way of the approaching train. The train at the time it struck the respondent's automobile was traveling about thirty miles per hour. The train struck the automobile where the right front door hooks onto the right front fender, and pushed the automobile and the respondent within it along the track for a distance of about 275 feet.

No point is made in this appeal as to the amount of the verdict and it is not necessary here to relate respondent's evidence of his physical injuries, hospital and medical expenses, earnings, damages to the automobile, etc.

At least three witnesses other than the respondent, testified that they were in a position at the time to hear a bell, whistle, or horn, and that none was heard. Other witnesses testified in behalf of the respondent of the alleged dangerous condition of the crossing in question, and that there was no flagman present to warn respondent and the

public of the approaching train, although several of the employees of defendant railroad were in close vicinity of said crossing.

The respondent introduced in evidence the ordinance of the city of Marshall, Missouri, in effect at the time of the collision, which declared it unlawful for any railroad engine, car or cars to be run at a rate of speed exceeding fifteen miles per hour, and provided for a fine of not less than $25.00, nor more than $100.00 for violation thereof.

The evidence of respondent and of the appellants was undisputed that defendant Hugh Montgomery, the engineer in charge of the train which collided with the respondent's car, was driving the train at the time and was employed by the Alton Railroad Company.

In plaintiff's main case there was identified Record Book 102, pages 264 to 279, inclusive, of the records of the county recorder of Saline County, which was offered and admitted as plaintiff's Exhibit 9, over the objection of defendants. It was then announced by counsel for plaintiff that the same would be introduced later. Upon rebuttal and at the end of the trial, counsel for respondent announced that plaintiff had completed his case except for the reading of Exhibit 9, "which was offered yesterday—we may want to amend our pleading to conform to some testimony, but we can do that by interlineation, if it can be agreed upon. The Court: 'All right, Mr. Rasse.' " Thereupon, follows the only other reference to or description in the record of said Exhibit 9, or the contents thereof, to-wit:

"Plaintiff's Exhibit '9', being County Record Book 102 at Pages 264 to 279, both inclusive, is in the words and figures as follows: (Said Exhibit is a lease dated April 3, 1900 from the Chicago & Alton Railroad to the Chicago & Alton Railway Company)."

Plaintiff's Exhibit 11, however, is thereafter set forth in full, which is an indenture between the Alton Railroad Company and the Continental Illinois National Bank & Trust Company of Chicago, Trustee, which is a conveyance of additional property by the Alton Railroad Company to a trustee, as security for the company bonds. Nothing in this last described instrument discloses any connection between the Alton Railroad Company, the Alton Railway Company, and the Chicago & Alton Railway Company, on the one hand, with the defendant Kansas City, St. Louis and Chicago Railroad Company, on the other. We discuss this feature of the case more fully hereinafter.

The evidence offered by the defendants tended to show that the engineer in charge at the time of the train in question, was Hugh Montgomery, one of the defendants; that he was at the time employed by the Alton Railroad and had for thirty-eight years been employed either by the Alton Railroad Company; that the train in question consisted of a motor car and one passenger car; that the motor car was gasoline-electric; that the train had come from Kansas City that morning, arriving at Marshall at 9:24 A. M.; that having stopped at the station at Marshall, Montgomery started his bell as he started

the train eastward; that he always turns the bell on first; that the bell is operated by air by turning on a valve in the cab; that the bell is ten inches across, and that the bell was ringing, and continued to ring as he crossed over the crossing in question; that in addition, he sounded his horn from 100 feet after he started from the station, and blew one long blast, then continued blowing the same at about six different times between the station and before reaching the crossing; the last time he blew it was about when he reached the crossing; that he was traveling between twelve and fifteen miles an hour when the crossing was reached; that speed is gained by the changing of gears of which there are three, and it is impossible to shift from first to second without shutting the engine off, and the gears cannot be changed until a speed of fifteen miles an hour is attained; at the time of the accident he had not yet changed gears; that the engineer sat on the right-hand side of the cab toward the front part thereof; that there is a window there to look through; that a fan and radiator to the left interfere with his looking in that direction close to the train; that the engineer did not see the automobile until he hit it; that the left front corner of his train struck the automobile; that he brought the train to a stop as quickly as he could by putting on the air in the emergency, which is done by means of a valve, which the engineer operates by the use of his left hand and which is located squarely in front of him; that it was drizzling rain as he approached the crossing; that the temperature was between thirty-five and forty; that his motorcar was fourteen feet high from the ground; the tank cars are eleven and one-half feet from the ground; that the front part of the automobile, when struck, was about in the center of the main track; that there was no whistle on the train, but it was equipped with an electric horn. It is operated by turning on a valve in the same manner as the bell is operated. He saw the tank cars as he started from the station, and they extended up to the Jefferson Street crossing. When going twelve to fifteen miles an hour, it would take 325 feet to stop it; he allowed two seconds of time for each time he sounded the horn as he approached the crossing; it was about 275 feet from the crossing to the place where the car dropped off of the train; his train traveled 435 feet before he stopped.

Appellants' evidence further tended to show that an electric bell was located about eight feet south of the south rail of the main track at the crossing and on the west side of the street; that it was twelve inches in diameter and is operated by track circuit, and is started when a train comes onto the track and shorts the release cut and closes the ringing circuit on the track; this short circuit is made by an east bound train at the second street west of the passenger station, and causes the bell to ring from that time continuously until the rear end of the train passes the bell; the bell also rings from a similar arrangement by the approach of trains from the east, beginning at the

second street east of the bell 1200 or 1500 feet from the crossing; that this and other bells are inspected every day by the company; that the bell in question was inspected at 7:00 o'clock on the morning of the accident by causing a short circuit across the rails; that the inspector heard the crash of the accident and as soon as he could put on dry clothes he walked down to the respondent's car and as he came back he tested the automatic bell and found that it worked; that while there, another train came through, called the Zephyr, a Diesel-powered Burlington stream-lined train east bound, and he noticed that the automatic bell operated; that just before the accident and while in the tool house drying his clothes, he noticed that when the motor train in question approached the crossing from the railroad station, the bell at the crossing was ringing; that the automatic bell at the crossing never rings unless a train comes over the tracks or unless a switch has been left open; that it is hard to see eastward from the crossing up the right-of-way until one gets on the middle track.

Other witnesses for appellants, claiming to be in position to hear, stated that they heard the train whistle, heard the electric bell on the engine ringing and the horn blowing, and that the crossing bell rang at the approach of the train and also after the accident when the Burlington Zephyr came through. Appellants' evidence also tended to show that it is 26 feet from the north rail of the north track to the north rail of the main track; 12 feet from the north rail of the north track to the north rail of the middle track; and 13 feet from the north rail of the passing track to the north rail of the north track. It is 13 feet from the center of one track to the center of the next track.

Appellants strongly urged that the peremptory instructions requested by each at the close of all the evidence should have been given because respondent's failure to exercisee the highest practical degree of care to know of the passenger train and avoid collision with it at the crossing barred recovery. (In other words, appellants contend that the respondent was guilty of contributory negligence as a matter of law).

Considering this point and the sole reason assigned in support thereof, it is necessary to recall the effect of the evidence germane to the question of contributory negligence. In determining whether or not respondent was, as a matter of law, guilty of contributory negligence barring his recovery herein, it is necessary to give to the respondent's evidence the effect and inference most favorable to him. Assuming, therefore, for the purpose only of such plea, that the respondent brought his car to a complete stop at and before going over the crossing in question and noting the standing freight train on his right, obstructing his view to the west down the tracks, but being required also to look for possible approaching trains from the east in

which direction his view from the point of his stopping was partially obstructed by buildings and by a curve in the right-of-way to the north, he heard no warning from the crossing bell, or the bell or horn of the train and, receiving no warning from a flagman, or anyone at the crossing of the approach of the train, and assuming, in fact, that none of such signals was given, and that the respondent proceeded over the wet crossing with his automobile in second gear at the rate of five to ten miles per hour without yet having been warned by signals or otherwise of the approaching train, and did not in fact see or hear the approaching train until his automobile had reached a point so near the track on which the approaching train was running that he was unable to stop his automobile before the front and thereof went onto the track in question, and that he did not see the approaching train until it was twelve or fifteen feet from him; assuming such facts, which respondent's evidence tended to prove, we are of the opinion that we cannot say, as a matter of law, that the respondent did not exercise the highest practicable degree of care. We believe that the evidence is sufficient on that point to submit to the jury the issue of whether or not the respondent did exercise such degree of care.

We are familiar with the rule that "a motorist, familiar with the existence of a railroad crossing, is chargeable with knowledge of, and hence is required to anticipate, the possible presence of a train standing upon or moving over the crossing"; Fitzpatrick v. Kansas City Southern Railway Company, 347 Mo. 57, 146 S. W. (2d) 560; and that "a failure on the part of a plaintiff, where a duty to look exists, to see what is plainly visible when he looks, constitutes negligence as a matter of law", State ex rel. Kansas City Southern Railway Company v. Shain, 340 Mo. 1195, 105 S. W. (2d) 915, and, further, that "if when approaching a railroad track, the plaintiff is unable to see whether he can pass across in safety, he must exercise care commensurate with the circumstances, and should, if necessary, continue to look until he can see, even to the crossing"; State ex rel. v. Shain, *supra*. We believe that it cannot be said, as a matter of law, that the plaintiff violated any of these well settled rules. Having stopped his automobile for the purpose of determining whether or not a train was approaching and, although he was unable to look but a short distance to the west on account of the standing freight train, he nevertheless did look both to the east and to the west and, not hearing the approach of the train, and not hearing the statutory warnings, he continued to cross at the very low rate of five or ten miles per hour. We believe it is a question for the jury to decide whether his conduct up to that position on the crossing, where he testified he then had no time, opportunity, or space to avoid the collision with the train appearing to his view for the first time, was a failure to exercise the highest degree of care. We, therefore, hold that the court did not err in refusing the peremp-

tory instructions of the defendants on the ground that the respondent was guilty of contributory negligence as a matter of law.

Appellant railroad company next contends that the facts were insufficient to make the defendant railroad company liable for the acts of the Alton Railroad Company or defendant Montgomery. Respondent alleges in his petition that the defendant railroad company was the lessor of the roadbed and railroad tracks running through Saline County, Missouri, under a lease to the Alton Railroad Company, whereby said roadbed and railroad tracks were licensed, permitted or under running arrangement or contracted to said Alton Railroad Company, and that said defendant, as such lessor, under Section 5163 of the Revised Statutes of Missouri, 1939, is liable for all acts, debts, claims, demands, judgments, and liabilities of the lessee or licensee corporation, the same as if said lessor operated said railroad. To establish those allegations the respondent introduced in evidence in his main case, his Exhibit 9, at which time, although the exhibit was admitted by the court, counsel for respondent announced that said exhibit would be introduced later. At the close of respondent's rebuttal, respondent introduced in evidence several records, and in connection with which announced that respondent was ready to rest his case, except for reading Exhibit 9, and perhaps would desire to make some amendment to his petition by interlineation. Appellants fail to set out plaintiff's Exhibit 9 in the record. The only reference thereto, other than above stated, is ''Plaintiff's Exhibit 9, being County Record Book 102, at Pages 264 to 279, both inclusive, is in the words and figures as follows: (Said exhibit is a lease dated April 3-1900 from the Chicago & Alton Railroad to the Chicago & Alton Railway Company).''

When a lease is made, as referred to in said Section 5163, Revised Statutes Missouri, 1939, the corporation so making the lease shall remain liable for all acts, debts, claims, demands, judgments, and liabilities of the lessee or licensee, or any sub-lessee or sub-licensee, the same as if it (the lessor of licensor) operated the road, or such part thereof, itself; and may be used in all cases and for the same causes and in the same manner as if operating its own road, provided that satisfaction in full of any judgment against either corporation shall discharge the other.

The record shows that the engineer, defendant Montgomery, was at the time of the collision, in the employ of the Alton Railroad, as were several other of defendants' witnesses employed at or near the place of the accident at the time in question. The appellant railroad company, by failing to have the record disclose the lease between the Alton Railroad Company and the Alton Railway Company, prevents us from determining whether or not the same discloses the defendant Kansas City, St. Louis & Chicago Railroad Company to have been a lessor of the tracks, roadbed, etc., here in question, and the latter's

consequent liability, if any, under the said statute for claims arising out of the operation of the railroad. We cannot accept the brief description of said lease noted in the record, but its full contents should appear for our inspection. The connection between the defendant railroad company and the Alton Railroad and the Alton Railway, being vital to respondent's cause of action, and the lease in question being evidently introduced for the purpose of supplying that necessary element of his case, we most assume, when appellant railroad company makes a point of failure to establish this necessary relationship on its part, and fails to supply a complete record of the instrument introduced on that point, that if the exhibit were fully shown it "would show the situation in the most unfavorable light to the (such) defendant", Smith v. Wilson, 296 S. W. 1036, l. c. 1040.

In a case against this same defendant railroad company in Nickell v. Kansas City, St. Louis & Chicago Railroad Company, 41 S. W. (2d) 595, this defendant railroad company was sued on a claim growing out of the operation over its track in Lafayette County, Missouri, and in that case a lease made in 1900 from the Kansas City, St. Louis & Chicago Railroad Company to the Chicago and Alton Railroad Company, and a lease by that company to the Chicago and Alton Railway Company were properly shown of record and it disclosed that said leases concerned the property of the defendant Kansas City, St. Louis & Chicago Railroad Company, and described the same as running "from the city of Mexico, in the County of Audrain, in the State of Missouri, through the counties of Audrain, Boone, Randolph, Howard, Saline, Lafayette, and Jackson to the city of Kansas City, in the County of Jackson, in the said state." In that case, as in this, the leases in question were vital to the case. Under the circumstances, we must presume that the lease of April 3, 1900, from the Chicago and Alton Railroad Company to the Chicago and Alton Railway Company, which was plaintiff's Exhibit 9, would show the interest of the defendant railroad in said railroad tracks and roadbed and operation of the railroad thereon, as to make this defendant railroad liable for obligations arising out of such operations as contemplate in said Section 5163, Revised Statutes Missouri 1939. Consequently, we overrule the denial of liability of defendant railroad company based on that ground.

The above disposes also of the claim that facts were insufficient to make the defendant railroad company liable for the acts of the defendant Montgomery, the engineer. Section 5163, Revised Statutes Missouri 1939, above discussed, making the defendant railroad company liable for the claims arising out of the operation of the leased railroad tracks, roadbed, and railroad would, of course, make it liable for the acts of the employees of the lessee railroad. Defendant Montgomery, the engineer, was the employee of the lessee railroad.

Appellant complains of Instruction No. 4, given by the court for the plaintiff on the ground first, that it did not require the jury, if they found thereunder for the plaintiff, to find that plaintiff was at the time of the collision in the exercise of the highest degree of care. Instructions 3, 4, and 5, given for the plaintiff, submitted, respectively, the cases on the theories of exceeding the speed limits under the ordinance of the city of Marshall, failure to give the statutory and other proper warnings of the approach of the train, and the failure to provide a flagman at the crossing. In Instruction No. 3, pertaining to the issue of exceeding the speed limits of the city ordinance, the same specifically required the jury to find that the plaintiff was at the time in the exercise of the highest degree of care, and in Instruction No. 5, covering the issue of failure to provie a flagman, the same requirement was specifically made. However, in Instruction No. 4, submitting the issue of failure to give the statutory signals, there is no requirement contained therein that the jury find that plaintiff was at the time in the exercise of the highest degree of care.

In plaintiff's petition he pleads the alleged negligence of the defendants and avers, among other things, that plaintiff, "while so driving his said automobile and in the exercise of the highest degree of care toward persons or other vehicles, approached the . . . crossing," etc.

In this connection it is to be noted that plaintiff's Instruction No. 2, given by the court, contained a proper definition of the highest degree of care. Defendants' Instruction No. 3, having to do with the ringing of the electric crossing bell located at the crossing, and also defendants' Instruction No. 4, having to do with the other warning signals, both expressly submitted to the jury the issue of the exercise of the highest degree of care on the part of the plaintiff.

Appellants concede that under the law, plaintiff's instructions in a negligence case need not anticipate the defense of contributory negligence if such has been affirmatively pleaded by the defendant. But the appellants argue that in the instant case the issue of the exercise of the highest degree of care by the plaintiff *was pleaded* in his petition and becomes an essential element of this case for proof, and therefore any instruction authorizing recovery under any theory of the case, should necessarily submit the issue of such exercise of the highest degree of care.

Appellants recognize that in Heigold v. United Railways Company, 308 Mo. 142, 271 S. W. 773, the court held that the omission was cured by the defendants' instructions. But appellants undertake to distinguish that case from the case at bar because in the case cited, the negligence of the plaintiff was made an affirmative defense in defendant's answer, and not made an element of the case by plaintiff in his petition.

It is our opinion that it was not essential to plaintiff's petition and cause of action therein stated that he plead that he was at the time in the exercise of the highest degree of care.

This question was before the court in Long v. Woolworth, 159 S. W. (2d) 619. In that case plaintiff's instruction was complained of because she had failed to hypothesize all the elements essential to recovery, in that the instruction failed to have the jury affirmatively find that the plaintiff was in the exercise of due care for her own safety at the time and place in question. The instruction did not contain such affirmative requirement. The defendant's instruction did make such requirement. In that case the defendant had not affirmatively pleaded contributory negligence nor failure of the plaintiff to exercise due care. The court said, l. c. 624:.

"While customarily done, it is not necessary for a plaintiff to allege in his negligence petition that he was in the exercise of due care for his own safety at the time of his injury or to negative contributory negligence. (Citations.) Regardless of that, however, and assuming that an essential element was omitted from the plaintiff's main instruction, which we seriously doubt, we are of the opinion that the error is harmless in this case. When all the instructions are construed together they are consistent and in unmistakable terms require a jury finding of the exercise of due care by the plaintiff's deceased. [McDonald v. Kansas City Gas Co., 332 Mo. 356, 59 S. W. (2d) 37.] The defendant correctly and fully caused the jury to be instructed on the subject. The rule of construing all the instructions together has been applied to plaintiff's instructions, omitting a finding of proximate cause and contributory negligence when plead as a defense and applies with equal force to an instruction omitting the plaintiff's due care. (Citations.)".

Under the above authority we hold that plaintiff's Instruction No. 4 was not erroneous in not requiring the jury to find that the respondent was in the exercise of the highest degree of care.

Appellants further complain of plaintiff's Instruction No. 4 because, as they contend, it requires the jury to find both the ringing of the bell and the sounding of the whistle. Plaintiff's Instruction No. 4 is as follows:

"The Court instructs the jury that under the law the defendants were required to place on each locomotive engine a bell to be rung at a distance of at least eighty rods from the place where the railroad shall cross any traveled public street and that said bell be kept ringing until it shall have crossed said street, or a steam whistle shall be attached to such engine and be sounded at least eighty rods from the place where the railroad shall cross any such street and be sounded at intervals until it shall have crossed such street, provided, however, that the law does not place upon the defendants the duty to ring a bell or blow a whistle while the same was stopped at the station.

You are further instructed that if you find from the testimony that the bell on said engine was not rung after it left the station and kept ringing until said train crossed the Jefferson Street crossing, and if you find from the evidence that a steam whistle or such engine, or horn, was not sounded from the time said engine left the railroad station and sounded at intervals thereafter until said train crossed the Jefferson Street crossing and that the distance from the station to the Jefferson Street crossing was less than eighty rods, then you are instructed that the failure to so ring the bell and sound the whistle as aforesaid, if you so find from the evidence that there was such failure to ring the bell or sound the whistle on said train, would constitute negligence on the part of the defendants and if you further find that because of said acts of negligence, if any, and as a direct result thereof the plaintiff was injured, then your verdict will be for the plaintiff.''

Section 5213, Revised Statutes Missouri 1939, while requiring either that a bell shall be placed on each locomotive engine and rung at a distance of at least eighty rods from the place where the railroad shall cross any traveled public road or street, and be kept ringing until it shall have crossed such road or street, or a steam whistle be attached to such engine and be sounded within at least eighty rods from the crossing and at intervals until having crossed such road or street, excepts the sounding of such whistle in cities. The collision in question was within the city of Marshall. The appellants contend that plaintiff's Instruction 4 was erroneous in the eleventh line of the second paragraph thereof in that it requires both the ringing of the bell and the sounding of the whistle. The respondent predicated his case, as shown by his petition, upon several theories, one of which was the failure of the engineer to sound the whistle and to ring the bell, or to give any warning whatever to plaintiff of the approach of the train in question in time for the respondent to have heard the same so as not to have driven onto said tracks at the said crossing.

It will be noted that plaintiff's said Instruction No. 4 advises the jury that the law requires a bell to be placed upon each locomotive, and to be rung at a distance of at least eighty rods before crossing any traveled street, and to be kept ringing until it shall have crossed same, *or* a steam whistle to be attached to the engine and sounded at the same distance before reaching such crossing, and to be sounded at intervals until having crossed the same, and the instruction proceeds to tell the jury that if they find from the testimony that the bell on said engine was no rung after leaving the station and kept ringing until having crossed the Jefferson Street crossing, and if they find further that a steam whistle on said engine or horn was not sounded from the time the engine left the station at intervals thereafter until having crossed said crossing, and that said distance was less than eighty rods, that the failure to so ring the bell *and* sound

the whistle, "as aforesaid, if you so find from the evidence that there was such failure to ring the bell *or* sound the whistle on such train", such failure would constitute negligence on the part of the defendants, etc. If, under the circumstances, the law does not require the railroad to sound a whistle, the plaintiff's cause of action would have existed upon the failure alone to sound the bell, as required, if all other essential elements were present. Respondent went further and assumed the burden of establishing that defendant neither sounded the bell, nor sounded the whistle, nor gave any other warning of the approach of the train. He likewise assumes this additional burden by his Instruction No. 4, requiring the jury, in effect, as a condition precedent on the matter of negligence of the defendants for failure to warn, to find that *neither* the bell was rung *nor* the whistle sounded, telling them that to do neither would constitute negligence. We think the qualifying words "as aforesaid", refer to the statement of the law in the first part of the paragraph complained of.

A similar situation arose in Lynch v. Missouri-Kansas-Texas R. Co., 61 S. W. (2d) .918. There the collision was in the city of New Franklin, Missouri. The respondent therein and other witnesses testified they did not hear the bell or whistle. Witnesses for appellants testified both bell and whistle were sounded within the distance and in the manner required. The petition in the case had included an allegation of negligence in the failure to sound the whistle. The instruction ignored the warning of the whistle. The court in that case held that the respondent had gone further than the statute, and pleaded as a ground of negligence the failure to sound the whistle, as well as the failure to ring the bell, and having produced evidence tending to prove the failure to give warning either by bell or whistle, it became the duty of the court to give the instruction in accordance with the averment of the petition and the evidence adduced. The court held that the failure to include in the instruction the requirement that the jury find no warning was given by the whistle was prejudicial.

On a similar point made in Moyer v. Chicago & A. R. Co., (Mo. Sup. *en banc.*) 198 S. W. 839, an instruction was given on behalf of the plaintiff, stating the various acts of negligence under which the defendant was charged, and required the jury as a condition precedent to a verdict for plaintiff, to find that defendants were guilty of the charges made. The accident happened in the city of Glasgow. The court *en banc* examined the objection of the defendant company to the instruction under consideration on the claim of the defendant that the instruction imposed too great a burden requiring the whistle to be sounded in the city and the court at l. c. 844, said:

"The objection urged to instruction numbered 1 is that it imposes an unauthorized burden upon the defendant. A discriminating analysis of its terms will show that this contention is not well founded.

Conjoined with the duty imposed upon defendant to construct and maintain a crossing 24 feet in width was that of ringing the bell or sounding the whistle upon the approach of one of defendant's trains to said crossing. The statute (section 3140, R. S. 1909) only requires that the bell be sounded. The alternative requirement of sounding the whistle at a crossing within the limits of a city is the matter complained of. The only effect of this requirement was to add to plaintiff's burden of proving negligence. A signal required of a railroad train approaching a crossing is for the purpose of warning. The limiting of the signal at crossings in cities is not to lessen the warning, but because the ringing of the bell is considered sufficient; and the sounding of the whistle, required elswhere, is eliminated, not because it will not constitute a warning, but on account of the annoyance it may give to those living near at hand. Coffin v. Railroad, 22 Mo. App. loc. cit. 604. While it sufficiently conforms to the requirement of the statute in actions charging negligence at a railroad crossing in a city, resulting in an injury from a failure to give warning of the approach of a train, to limit the allegation of negligence to failure to ring the bell, if the plaintiff goes further, as in this case, and alternatively pleads as a ground of negligence a failure to sound the whistle, he will be required to prove the same. The defendant, however, is only required to show a compliance with either of these requirements to free himself from negligence so far as concerns the giving of signals.''

The court held: ''The instruction, having been drawn in conformity with the averments of the petition, was not erroneous.''

If this were not sufficient in the case at bar, the defendants' Instruction No. 2 plainly instructed the jury that the statutes did not require the train of defendant railroad to sound the whistle as it approached the crossing in question, beginning eighty rods from the crossing until after the train had passed over the crossing and that it was a full compliance with the statute law if the bell on the train was rung at a distance of eighty rods from the crossing until the train was passed over the crossing. We, therefore, rule against the appellants on their said objection to plaintiff's Instruction No. 4 on the ground that both the sounding of the bell and the sounding of the whistle were required.

Appellant Montgomery further objects to plaintiff's Instruction No. 4 for the further reason that no actionable negligence could be predicated as to him for the alleged failure to give the statutory signal by whistle or bell. In the case of Lynch v. Missouri-Kansas-Texas R. Co., supra, a like question was involved. It will be noted plaintiff's Instruction No. 4 in the instant case instructs the jury that the failure to give the warning by ringing of the bell or by steam whistle or horn, would constitute negligence on the part of the defendants. Thus the instruction is made to apply to appellant Montgomery, the engineer, as well as to the appellant railroad company. In the Lynch case

the engineer and fireman of the locomotive, codefendants with the railroad company, assailed the plaintiff's instruction upon the ground that it authorized a verdict against said individuals if the jury find that they failed to ring the bell. They argued that such charge is nonfeasance, for which the railroad company alone was liable but for which they, the individuals, were not liable to third persons. The court went further than the authorities cited by the individual appellants on that point and analyzed the section of the statute in question as follows, 98 S. W. (2d) l. c. 924, 925:

"But in our opinion the instruction is bad as to the engineer and fireman for a more obvious reason than for nonfeasance, and we state that other reason thus: The statute (1456) provides a penalty of $20 for every neglect of the provisions of the section requiring the bell to be rung or the whistle to be sounder upon the approach of a train to a crossing on any traveled public road or street, the penalty to be paid by the corporation owning the railroad in an action by the prosecuting or circuit attorney. . . . But we have seen that the mentioned section further states after the penalty clause: 'And said corporation shall also be liable for all damages which any person may hereafter sustain at such crossing when such bell shall not be rung or such whistle sounded as required by this section.' Respondent in his petition imputes negligence not only of the defendant railroad company but to the personal defendants, the engineer and fireman, for violation of the duty, imposed by section 4756, to ring the bell or sound the whistle. The statute restricts such liability to the railroad corporation alone. Therefore the instruction is faulty in subjecting the two personal defendants to statutory liability for failure to ring the bell. With respect to its penal provisions, the statute is to be strictly construed. State to use, etc. v. Chicago, Rock Island & Pacific Ry. Co., 19 Mo. App. 104. But, so far as it is to be considered as compensatory for an injury done, it is to be construed as any other statute. Parish v. M. K. & T. Ry. Co., 63 Mo. 284. Under familiar rules of statutory construction and under the averments of the petition the personal defendants are not liable to respondent for failure to ring the bell."

Again, in Hoelzel v. Chicago, R. I. & P. Ry. Co., 85 S. W. (2d) 126, 130, the Supreme Court said:

"By the terms of the statute in question, the only party made liable in damages which result from failure to give the statutory signals is the railroad."

We are unable to distinguish the case at bar on the point now under consideration, urged by the personal defendant Montgomery, from the above decisions of the Supreme Court of Missouri. For that reason we rule that, as to defendant Montgomery, plaintiff's Instruction No. 4 was prejudicial and erroneous.

Appellants object to plaintiff's Instruction No. 5 submitting to the jury the matter of the failure of defendants to have a flagman at the crossing at the time in question. The instruction directs a verdict against the defendants providing the jury determine such failure to constitute negligence as in said instruction defined. Considering all the evidence, we are of the opinion that it was not error for the court to submit to the jury this issue in so far as the defendant railroad company is concerned. As to the defendant Montgomery, however, it is clear that nothing in the evidence tends to show that there was any duty or obligation on his part to place a flagman at the crossing, nor that he had any authority so to do. That being true, plaintiff's Instruction No. 5, authorizing a verdict against him of the jury finds the failure of the defendants so to place a flagman at the crossing to be negligence, was prejudicial and erroneous as to appellant Montgomery.

Appellants' last point is that the court erred in admitting evidence that on January 26, 1944, a year and eight months after the date of the accident, the electric crossing bell was found to be ringing continuously for fifteen mnutes, and at another period for thirty minutes when no train on the main track was in sight. Appellants claim that this evidence was remote and was offered for the purpose of prejudicing the jury as to the automatic bell signal and its functioning at the time of the accident, and a year and eight months previous. We think that the appellants are in no position to complain of this testimony because in defendants' evidence there was much testimony as to the usual performance and response of the bell other than at the particular time of the collision. For instance, the railroad's inspector was asked by appellants' counsel:

"Q. Now, if a train is standing in the station at Marshall there— an east bound—does it continue to ring the bell?

"A. All the time the train is in that circuit.

"Q. Where will that train run out of the circuit?

"A. When the rear end passes the bell."

Such character of evidence was offered by appellants plainly for the purpose of showing that the bell consequently would have and did function and did ring at the time of the approach of the train which collided with the respondent's automobile. In addition, appellants made no objection to plaintiff's extended cross-examination of appellant railroad's witness Marshall, signalman, on the alleged instance of the ringing of the crossing bell when no train was in sight.

From the above conclusions it appears that no reversible error was committed in the trial as to the appellant railroad company, but that plaintiff's Instructions 4 and 5 were erroneous and prejudicial as to the appellant Hugh Montgomery, the engineer. We are, therefore, confronted with the question as to the proper method of disposition of this case as to each of the appellants. This exact question was be-

fore the Supreme Court of Missouri in Hoelzel v. Chicago, R. I. & P. Co., 85 S. W. 126, l. c. 133. In that case error was found in the plaintiff's instruction as to statutory signals wherein the same was made to apply erroneously to the engineer. The court held the instruction good as to the railroad and erroneous as to the personal defendant, the engineer. The court reaffirmed the holding in Stotler v. Railroad, 200 Mo. 107, 109, 98 S. W. 509, 522, declaring the right of the court to reverse as to one tort-feasor and affirm the judgment as to others. It further reaffirmed that court's former decisions in Neal v. Curtis & Company, 328 Mo. 389, 41 S. W. (2d) 543, and Barr v. Nafziger Baking Company, 328 Mo. 423, 41 S. W. (2d) 559, wherein, in similar situations, the courts in those cases upheld the right of the court to reverse and remand the causes with directions to the trial court to hold in abeyance the verdict of liability as to defendant against which no error was committed, and directed a new trial as to the liability of the other defendant against which error was committed, but the court in the Hoelzel case, *supra,* disagreed with the last two cases mentioned in their further order in such cases that a new trial as to both defendants be held as to the question of damages, in order to avoid two judgments in the case. The court in the Hoelzel case said, 85 S. W. (2d) l. c. 134:

"We agree that there can be but one final judgment in a case which must dispose of all the issues, but we do not agree that it was necessary, in the cited cases, to direct a new trial on the question of damages in order to prevent two judgments in the same case. If, in the cited cases, the verdict of liability was permitted to stand against one defendant because it was free from error, by the same token, if the verdict as to the amount of damages was free from error, it likewise should have been permitted to stand against that defendant. Two judgments in the same case could have been prevented by reversing the judgment and remanding the cause with directions to hold in abeyance the verdict as to both liability and amount of damages as to the defendant against which no error was committed, until the cause was finally disposed of as to the liability only of the other defendant, then enter judgment for the amount of the verdict held in abeyance against all defendants finally held liable.

"A plaintiff should be permitted to hold the amount of a verdict in which there is no error. A defendant should not be given a second trial of an issue where there was no error in the first trial of that issue. The rule we suggest reaches that result, but the rule announced in the cited cases does not, and for that reason they should not be longer followed on that point."

The court in the Hoelzel case thereupon reversed the cause and remanded the same with directions to the trial court to hold in abeyance the verdict as to both liability and amount of damages as against defendant Chicago, R. I. & P. Ry. Company, and another defendant, un-

til the case was disposed of as to the liability of defendant, the engineer, and then to enter a judgment for the amount of the verdict held in abeyance against all defendants finally held liable.

In the Hoelzel case, as in the case at bar, the instruction held erroneous as to the engineer "was not calculated to prejudice the minds of the jury as to the character or extent of the plaintiff's injuries or the amount he should recover therefor, because it makes no reference whatsoever to either of these subjcts."

The Hoelzel case was again followed by the Supreme Court in the case of McCombs v. Ellsberry, 85 S. W. (2d) 134, in which a like disposition of the case was made on appeal.

In view of the above authorities it follows that the judgment in the case at bar should be reversed and the cause remanded with directions to the trial court to hold in abeyance the verdict as to both liability and amount of damages against appellant Kansas City, St. Louis & Chicago Railroad Company, until the case is disposed of as to the liability of defendant Hugh Montgomery, then to enter judgement for the amount of the verdict held in abeyance against the defendants finally held liable. It is so ordered.

All concur.