### CIRESE v. SPITCAUFSKY et al.

No. 21767.

Kansas City Court of Appeals.

Missouri.

Jan. 11, 1954.

David M. Proctor and John J. Cosgrove, Kansas City, for appellants.

J. K. Owens and I. I. Ozar, Kansas City, for respondent.

DEW, Judge.

This action was originally brought against Frank L. Lang and Reed McKinley, who were officials of Kansas City, Missouri, and against Charles Spitcaufsky and Hyman Spitcaufsky, doing business as C. & H. Wrecking Company, to recover damages for the unlawful tearing down and removal of certain parts of two buildings and for the appropriation of certain portions of the contents thereof belonging to the plaintiff, and for an injunction to prevent further demolition of the buildings and removal of their contents. Kansas City, on its motion, was allowed to intervene as a party defendant, in which motion the city averred that at all times mentioned in the petition all the defendants named were acting as its servants and agents in the matters pertaining to the issues raised in the petition and that their acts were performed in accordance with Section 302(d) of Ordinance No. 9519 of said city.

At the conclusion of the trial the court dismissed the petition as to defendants Lang and McKinley and found the issues for plaintiff and assessed his actual damages at $2000, and punitive damages at $1000 against the appellants Kansas City, Missouri, and Charles and Hyman Spitcaufsky.

On August 22, 1950, a temporary restraining order was issued to plaintiff to

prevent the defendants from wrecking and removing any part of the buildings, or any of the personal property therein until further order of the court. This was followed by a motion by the defendants to dissolve that order, but the record does not show any action of the court thereon. The answer of the defendants Spitcaufsky was in the nature of a general denial and an averment that they lawfully entered upon the premises described to raze the buildings so as to make them safe for the public using the streets, sidewalks and public alleys adjacent thereto. Thereafter the plaintiff replied to the answer of the defendants Spitcaufsky and generally denied the same.

On October 5, 1950, the plaintiff filed his amended petition, wherein it alleged his ownership of the buildings described; that the same consisted of two stories and a basement each, and contained certain personal property stored therein; that defendant City and its said officials conspired among themselves to obtain possession of the real estate and personal property described, and without regard to the rights of the plaintiff, and contrary to the State and Federal Constitutions to confiscate said property without due process of law, and pursuant to said conspiracy unlawfully, willfully, wantonly and maliciously induced defendants Spitcaufsky immediately to enter upon said premises forcibly and to raze and destroy said buildings and improvements and to remove and convert the same to their own exclusive use; that defendants Spitcaufsky did forcibly enter upon said premises and took possession thereof, including the buildings and improvements and all personal property stored therein, and did remove certain portions of the personal property and certain portions of the aforesaid buildings and improvements with a view to remove every portion thereof; that as a direct result and consequence of the aforesaid acts plaintiff sustained actual damages in the amount of $25,000, and by reason of the fact that said conduct was willful, wanton and malicious, plaintiff should recover the sum of $25,000 as punitive damages. The petition further prayed for a temporary and permanent injunction,

as aforesaid. The answer of the defendants Spitcaufsky was refiled.

Defendants Lang, McKinley and Kansas City answered by general denial and averred that the City entered into a contract with defendants Spitcaufsky to remove the buildings because they were an immediate hazard to life, limb and property, and did so under the authority of City Ordinance 9519, Section 302(d). Plaintiff's reply was a general denial and a plea that the ordinance pleaded was unconstitutional and void. The Supreme Court has ruled that no constitutional questions are properly raised and preserved in this case and has retransferred the appeal to this court. 259 S. W.2d 836.

According to the plaintiff's evidence the two brick buildings in question face south and are known as 108–110 West 3rd Street. They are contiguous and separated only by a party wall in the center. The west wall of the west building, 110 West 3rd Street, abuts upon an alley running the full length of the building and beyond. The buildings are probably 60 to 70 years old. They originally had four stories, are of brick exterior and of mill construction in the interior, with the joists set in the brick walls. About the time of the first World War, 108 caved in from overloading. About 1937, there was a fire in 110. The fire damage was repaired. In 1948, the two upper stories of both buildings were torn down and some pilasters were installed to support the walls. No new roof was then built but wooden flooring was laid over the entire top to serve as a flat roof. The elevator shaft on 110 was left open so that water on the roof would drain into it. This roof construction exposed the building to rain, snow and freezing. For ten or eleven years there have been bad cracks in the west wall, which abutted the alley. There were also cracks in the front and rear walls. There is a bulge in the west wall over six or eight inches, and the rear wall is also out of plumb. Large trucks use the alley on the west and cause great vibration. The cracks and the general condition of the buildings as they now exist have remained substantially

unchanged for many years and, in the opinion of plaintiff's witnesses, the buildings are not unsafe.

On August 17, 1950, defendant Kansas City addressed the following letter to the plaintiff:

"Mr. J. C. Cirese
3417 East 9th St.
Kansas City, Mo.

"Dear Mr. Cirese:

"The buildings located on the West 47⅓ feet of Lots 97 and 98, Block 10, Old Town Addition, otherwise known as 108 and 110 West 3rd Street, are in immediate danger of collapsing and as I have been unable to procure your cooperation in removing these buildings, I am giving you this notice, that I, having the authority given me in Section 302, Paragraph (4) of Ordinance 9519, the Kansas City Building Code, am declaring these buildings an immediate hazard, dangerous to life, limb and property, and I will proceed under this authority to remove said buildings, and that after this demolition, the City of Kansas City will institute a suit to reimburse the city for the cost of this demolition.

"However, if you elect to demolish these buildings, without having the City proceed, you may have twenty-four (24) hours, from the date you receive this letter, to begin the demolitions.

"This notice is being served on you as a courtesy and for your information. The ordinance above referred to does not require such a notice.

"Yours very truly,

"Frank L. Lang
Commissioner of Buildings and Inspections".

The above letter was received by the plaintiff on Saturday, August 19, 1950. On Monday, August 21, the defendant City entered into a contract with the defendants Spitcaufsky. This contract and several other of plaintiff's exhibits do not appear in the files, nor in the transcript, and defendants complain that they were not produced to them for purposes of their brief. However, defendants admit that a contract was entered into between them to remove the buildings, and the following excerpt from the contract was read to the court: " * * * all materials to become the property of the C. & H. Construction Company, Wrecking Company. This debris is to be left in the basement, excluding inflammable debris that will be hauled away". The plaintiff asserts that this contract provided that defendants Spitcaufsky were to be paid $1400 for demolishing the buildings and to receive "all the personal property in said buildings". The full terms of the contract not being available, we find no evidence of such agreement as to "all personal property in said buildings".

Plaintiff's son testified that on August 22, 1950, he happened to go by the building and saw men tearing off the roof and attempted to stop them, but was run off. He then went to the office of his attorney, who promptly filed this action and obtained a temporary injunction. The work stopped after the defendants had worked one day on the job. Plaintiff and his son testified that at the time the defendants began to demolish the buildings there were stored in them many items of war surplus materials owned by them, consisting of work benches, silica gel, oil racks, fire extinguishers, swivel chairs, metal frames and angle iron. They stated that their inventory (which they failed to produce at the trial) showed that of the above personal property there had been removed, after the defendants had entered the buildings, 2000 fire extinguishers, valued at $3 to $6 each, parts of oil racks, parts of silica gel of the value of $1.30 per pound, and all the work benches. They testified that to replace the parts of the buildings removed by defendants is would cost $2,870 for the fire walls, $872 for the second story floor, $751 for the roof, $984 for the first floor of 110 and $880 for the first floor of 108 West 3rd Street.

Defendants' evidence was that several days before starting to work on plaintiff's buildings, Charles Spitcaufsky was asked by the defendant City to view the buildings in order to make a bid on the job of demolishing and removing them; that 110 (next to the alley) was wide open; the windows and doors were either open or the glass in them was missing, and some were covered with old boards; that he saw in 110 a pile of iron window frames and some bundles of angle iron, all covered with dust and dirt; that he was able to go into 108 by going through the building of the neighbors to the east and he saw 250 metal drums of silica, a pile of broken swivel chairs, 25 steel and wooden frames, 30 bundles of angle iron, 200 hand pumps, all war surplus materials; that he had an inventory made of those items at the time, which was introduced in evidence. The floors of this building broke through as the men walked on them. There was also in evidence that no work whatever was done in 108, but that on August 22, work was begun on 110 only, and after removing the flooring on top of 110 and throwing it down to the basement, nothing was removed except one truck load of junk and inflammable materials out of that building. After the injunction was served they did nothing further on either of the buildings. They denied taking any of the personal property or materials from 108.

Much of the defendants' evidence consisted of photographs and testimony pertaining thereto. These photographs clearly disclosed a condition of extreme deterioration of the buildings. They reveal the makeshift roof over both buildings, consisting of one layer of flooring laid on the joists of the former third floor after the removal of the upper two stories. The flooring was warped, broken and rotten in many places. Where the joists were exposed there are many that appear decayed and warped. Cracks appear in brick walls both inside and out, two or more of which in the wall next to the alley extend practically from the ground to the top. Under some of the windows the supporting bricks are settled and cracked and much in need of pointing and other repair. An engineer for the City testified that the west wall abutting the alley had a bulge in it somewhere between the front and back of the building of one foot and five inches, which was more than the thickness of the wall itself. He also testified that the front and rear walls were badly out of plumb. In his opinion the buildings were in a dangerous condition. Several other witnesses for the defendants testified that the buildings were immediately hazardous to public safety.

The ordinance, relied upon by the defendants, No. 9519, Section 302(d), although not formally introduced, was considered by court and counsel and will be considered here as in evidence. It reads as follows:

"Whenever any building or other structure has become so damaged by wind, fire, deterioration or other cause or causes and is in such condition, in the opinion of the Building Commissioner, as to constitute the same an immediate hazard dangerous to life, limb or property, or to the public, because of immediate danger of collapse, the Building Commissioner shall cause the removal and demolition thereof forthwith and without notice".

Under its Findings of Fact and Conclusions of Law the court found that the notice mailed to the plaintiff by the defendant City was insufficient and not proper notice as prescribed by law; that the ordinance upon which the City bases its authority to demolish the buildings was not binding upon the plaintiff; that the City had no right to contract with the defendants Spitcaufsky to demolish the buildings or to transfer any of the property belonging to the plaintiff to the Wrecking Company; that the Wrecking Company had no right or authority to enter upon the premises and remove any of the property from the buildings or tear down or remove any of said buildings; that by reason of the removal of parts of the buildings plaintiff was damaged in the sum of $2000; that because the acts of the defendants were wrongful, unlawful and malicious, plaintiff was entitled to recover $1000 punitive damages.

Defendants' first assignment of error is that the Court erred in restraining and permanently enjoining them from razing the buildings because under all the evidence the officials of the City had reason to believe that the buildings were about to collapse and their collapse would endanger life, limb and property. The ordinance above quoted was cited. Ordinarily, the sole purpose of a temporary injunction is to preserve the controversy in statu quo until the merits of the controversy are adjudicated. Generally, upon final decree, the temporary injunction has served its purpose and should be dissolved unless under the pleadings and the evidence, it is made permanent. St. Louis 221 Club v. Melbourne Hotel Corp., Mo.App., 227 S.W.2d 764, 769. In State on Inf. of McKittrick v. American Ins. Co., 351 Mo. 392, 394, 173 S.W.2d 51, 52, the court said: "Ordinarily, the sole object of a temporary injunction is to preserve the subject of the controversy in the condition in which it is when the order is made, to maintain the existing condition or status until the controversy is decided.". The record in the instant case does not show that the preliminary order ever was made permanent and the court, in its final decree, made no express disposition of it. The court retained its jurisdiction to award damages. Missouri Cafeteria v. McVey, 362 Mo. 583, 242 S.W.2d 549, 553; 43 C.J.S., Injunctions, § 217(2), p. 954. Defendants are in no position herein to complain that the temporary injunction against them, which expired at the final determination of the case, was not made permanent. State ex rel. Barker v. Assurance Co. of America, 251 Mo. 278, 296, 158 S.W. 640, 46 L.R.A.,N.S., 955; High on Injunctions, Vol. II, page 1494, § 1499.

Defendants next assert that the court erred in considering an improper standard of values in determining plaintiff's actual damages. It is urged that the proper standard is not the cost of repairing the buildings, but the market value of them before and after the alleged damage. The judgment of the court assessing plaintiff's actual damages at $2000, does not disclose whether the same includes damage to the real estate or for the personal property claimed to have been removed, or both. Both were sought by the plaintiff. Likewise, the introductory words of the judgment entry pertaining to the damages, states that: "The plaintiff has sustained actual damages in and to the sum of $2000.00". However, in the court's "Findings of Fact and Conclusions of Law", the court makes no finding of any actual damages sustained except as follows: "The Court further finds that plaintiff was damaged by reason of the removal of parts of the building or structure and by reason thereof plaintiff was damaged in the sum of $2000.00". This amount was the full assessment of actual damages in the entry of judgment.

When defendants attempted to elicit from plaintiff's witnesses if repair of the buildings would be feasible, plaintiff's objection was sustained. The court said it did not think the question was before it as to how much it would cost to repair the building or whether it could be repaired. Yet the plaintiff was allowed to testify to the extent of the injuries to the buildings and the cost of repairing the roof, fire walls and the two floors. There was no evidence of the difference in market value of the buildings before and after the damages were alleged to have occurred.

From the record we construe the court's judgment for plaintiff for $2000 actual damages to consist wholly of damages to the building or buildings, consistent with the court's findings of such damages in that amount. If construed as including no damages to the real estate, such judgment would be irreconcilable with the findings mentioned. If construed as consisting of damages both to the real estate and for the appropriation of personal property, the damages to the real estate as shown in evidence were clearly of a major and permanent character. When the damage to real estate is permanent and the injuries of a major character, the proper measure of damages is the difference between the market value of the building immediately before and after the injuries occurred and there must be evidence of such values. St. Louis

Trust Co. v. Bambrick, 149 Mo. 560, 569, 51 S.W. 706; Schaefer v. Frazier-Davis Const. Co., Mo.App., 125 S.W.2d 897.

In Gulf, M. & O. R. Co. v. Smith-Brennan Pile Co., Mo.App., 223 S.W.2d 100, the court fully discussed the measure of damages above stated. It upholds the general rule, with many citations of authorities. It also dealt with the exceptions to the rule, as where the damages claimed are minor and readily remedied by repair. The court held, 223 S.W.2d on page 104, that in the absence of proof of "comparative insignificance of the damage to bring the case within such exception to the general rule", the plaintiff could not rely upon evidence of the cost of repair. The court said that—"After such a showing is made the actual costs of repair might then be shown as a basis for determining the value to plaintiff of the property before and after the accident." We conclude that the measure of damages to plaintiff's real estate in this case is the difference between the reasonable market value of the building immediately before and immediately after the injuries were incurred. As to such values the record is wholly void of any evidence. It was error to assess actual damages to the buildings without proof of such values.

It is earnestly contended by the defendants that the court erred in awarding $1000 punitive damages. Defendants urge that they acted in good faith, even though they were mistaken in the view that the buildings might collapse at any time. They contend that defendants Spitcaufsky certainly could not be charged with malice inasmuch as they had a right to assume the City officials were acting with authority in contracting for the demolition of the buildings. From the findings of the court that the ordinance relied on was not binding on the plaintiff, and in view of the fact that there is no constitutional question in the case, we construe such determination by the court to be that the element of immediate hazard required by the ordinance was not established by the proof, and that, therefore, the ordinance did not apply to the conditions shown nor authorize the radical action of the defendants in evidence. Both parties admit that there was conflicting evidence as to whether or not the buildings were in a dangerous condition. While defendants clearly proved that the buildings were deteriorated to an extreme degree and, in the opinion of their experts, constituted an immediate hazard to public safety, there was also competent evidence on the part of the plaintiff that the conditions described were practically the same as had existed over many years, created no greater danger in such lapse of time, and in the opinion of their experts, did not constitute any immediate hazard of collapse, or danger to the public safety. Confronted with this conflict in evidence we are unable to determine that the court erred in arriving at the conclusion that the condition of the buildings constituted no immediate hazard to life, limb or property, or to the public because of immediate danger of collapse. Hence, the court could properly find that the ordinance was not applicable or binding upon the plaintiff, and that defendants acted without any authority in law.

In Jeck v. O'Meara, 343 Mo. 559, 122 S.W.2d 897, loc. cit. 905, the following rule is approved by the court: "In order to recover punitive damages 'there must be present in the circumstances, some element of malice, fraud, or gross negligence, otherwise the measure of damages is such an amount as will constitute a just and reasonable compensation for the loss sustained, and nothing more'." See, also, 25 C.J.S., Damages, § 119, p. 715. Fully recognizing the above rule we consider its application to the facts at hand. As we have said, we conclude that the court allowed nothing to the plaintiff for the removal or appropriation of any of the personal property alleged to have been stored in the buildings, but did allow actual damage for the unlawful tearing down and removal of parts of the building or structure. However, if, in fact, the defendants entered upon the premises of the plaintiff and tore down and removed major parts of his building, as the court evidently found was done; and that such conduct on the part of defendants was without any lawful authority and was done

wrongfully, maliciously and without just cause or excuse, it cannot be said, as a matter of law, that no punitive damages would be allowable if actual damages would be sustained. Lampert v. Judge & Dolph Drug Co., 238 Mo. 409, 413, 141 S.W. 1095, 1098. The purpose of punitive damages is not alone a penalty for the particular offense, but to deter like wrongs. In Jones v. West Side Buick Auto Co., 231 Mo.App. 187, 93 S.W.2d 1083, 1089, it was said: "Punitive damages are, of course, allowed not only to punish the defendant for the particular offense he has committed against the plaintiff, but also to serve as a warning and example to deter the defendant and others from committing like wrongs in the future." While it may be said that there is no evidence in the instant case of actual malice, there is evidence of legal malice. In the Lampert case, supra, the Supreme Court said [238 Mo. 409, 141 S.W. 1098]: "There are two kinds of malice; malice in fact, and malice in law. Legal malice, as distinguished from actual malice, will justify exemplary damages in this state."

Since, however, the issue of the amount of actual damages to the buildings is to be retried under our disposition of this case, it follows that the issue of punitive damages must abide the determination of such actual damages, if any, and if any such actual damages be so assessed, then the issue of punitive damages may thereupon be redetermined. Carnes v. Thompson, Mo.Sup., 48 S.W.2d 903.

Because of the necessity of retrying the issue of the amount of actual damages, if any, as aforesaid, we need not consider defendants' further points that the court erred in awarding $2000 actual damages because plaintiff's evidence of damages was manifestly false, nor that the court erred in giving plaintiff any equitable relief because plaintiff forfeited such right by urging a false claim.

Since we have determined that the trial court correctly decided the issue of liability, it follows that it is not necessary to retry that issue. Therefore, the judgment should be reversed and the cause remanded with directions to the trial court to try only the issue of the amount of actual damages to the buildings, if any, in accordance with this opinion, and if any such actual damages be so found, then to try the issue of punitive damages, if any, and then to enter judgment against the defendants for such actual and punitive damages, if any so found, and if no such damages be so found, to enter judgment for defendants. Stith v. St. Louis Public Service Co., Mo.Sup., 251 S.W.2d 693, 702; Hoelzel v. Chicago, R. I. & P. Ry. Co., 337 Mo. 61, 85 S.W.2d 126; McGraw v. Montgomery, 239 Mo.App. 239, 185 S.W.2d 309; Franklin v. Kansas City Public Service Co., 239 Mo.App. 151, 186 S.W.2d 546; Section 512.160, subd. 3, RSMo 1949, V.A.M.S. It is so ordered. All concur.