HANNIBAL BRIDGE Co., Appellant, *vs.* BERTHA H. SCHAU-
BACHER, *et al.*, Respondents.

1. *Public highway—Title to land.*—The owner of land joining on a public high-
way, street or alley, owns the fee to the center thereof, subject to an ease-
ment in the public.

2. *Damages—Condemnation of land.*—Where a statute authorizing the con-
demnation of land requires the commissioners to "assess the damages which
the owner of the land may sustain by reason of such appropriation," the as-
sessment is not confined to the land actually taken. There may be consequen-
tial damages which result by reason of the appropriation, which are fairly com-
prehended within the scope of the law.

3. *Condemnation of land—Damages — Consequential — Measure of.* — When
nothing but compensatory damages are allowed, the recovery must be confined
to the actual damages sustained; and where the damages consisted in depriving
the owner of the use of other lands on which were erections and improvements
necessary for the use of the lands remaining, which erections and improve-
ments could be moved to said remaining land, and be then as valuable and
useful as before, the measure of damages would be the expense of such re-
moval, and the value of the time lost while it was being effected.

*Appeal from Hannibal Court of Common Pleas.*

*Thomas H. Bacon and W. C. Foreman*, for Appellant.

I. The court erred in refusing appellant's instruction, (2)
that if the Schaubachers claimed their parcels of land in suit
under respective title deeds along the "east line," (Jackson
vs. Hathaway, 15 John., 447) and by the "west side," (Smith
vs. Slocomb, 9 Gray, 36) of Craig's alley, (Angell Highways,
2 Ed., p. 387, § 314; 3 Kent Comm., 11 Ed., p. 551, ;
3 Washb. R. P., 3 Ed., 361, note; Tyler Bound., 1874, ch.
XI, pp. 133–144), then such ownership, giving no interest
whatever in Craig's alley, did not entitle the Schaubachers to
a claim for damage to out-lot 93, arising from the bridge
company's appropriation of land exclusively on the other
side of Craig's alley. (Hatch vs. Vermont, &c., 25 Vt. 60.)

Being on the opposite side of a thoroughfare street in a
city, (Dillon Mun. Corp., 1 Ed., p. 534, § 556), the severance
was completed, and out-lot 93 was merely " injuriously af-
fected," (see English Statutes), and our statute makes no pro-
vision for such damages in this proceeding, (Wagn. Stat.,
1872, p. 326, § 1) nor even for running on the highway itself.
(Porter vs. North Mo., 33 Mo., 128.)

· II. The court erred in excluding testimony, showing that the brewery premises on out-lot 93 could, at a moderate expense, have been easily placed in thoroughly effective condition by a transfer of the works from the east side of Craig's alley to the respondent's premises on the west. Even in a case of trespass *vi et armis*, the cost of such repair would be the very measure of damage. (Shear. & Redf. Negl., 2 Ed., p. 677–679, § 602; Douglas vs. Stephens, 18 Mo., p. 362–366 Atchison vs. Dr. Franklin, 14 Mo., 63; Brown vs. Worcester, 13 Gray, 31.)

III. It is a general principle that a party cannot recover for damages which could be averted by reasonable exertions. (Fisher vs. Goebel, 40 Mo., 475–481; Waters vs. Brown, 44 Mo., 302, 303; State vs. Powell, 44 Mo., 436, 440.)

*James Carr*, for Respondents.

I. The statute under which this proceeding took place, is very broad and comprehensive in its terms, viz: "To assess the damages which such owners may severally sustain in consequence of the establishment, erection and maintenance of such road." (§ 1, Art. V, ch. 37, pp. 326–7, Wagn. Stat.) This is broad enough to embrace all consequential damages, as in Massachusetts, Pennsylvania and other States; and lands injuriously affected, as in England. (Hannibal Bridge Co. vs. Schaubacher, 49 Mo., 555; Parker vs. Boston & Maine R. R. Co., 3 Cush., 107; Dodge vs. Essex, 3 Met., 380; Ashby vs. Eastern R. R. Co., 5 Met., 368; Imlay vs. Union Branch R. R. Co., 26 Conn., 249; Palmer Co. vs. Ferrill, 17 Pick., 58; Dorlan vs. Eastern Branch & Waynesburg R. R. Co., 46 Penn. St., 520; Watson vs. Pittsburg & Connellsville R. R. Co., *Id.*, 480; East & West Indian Docks & Birmimgham Junction R. R. Co., vs. Gattke, 6 Eng. R. R. Cases, 283; The Queen vs. Eastern Counties Rl'y Co., *Id.*, 539; Lawrence vs. The Great Northern Rl'y Co., 6 *Id.*, 495; Lafayette Plank Road Co. vs. New Albany & Salem R. R. Co., 13 Ind., 93; Newcastle & Richmond R. R. Co. vs. Penn. & Indianapolis R. R. Co., 3 Penn., 464; Hooker vs. New Haven & Northamp-

ton Co., 14 Conn., 146; Baltimore & Potomac R. R. Co. vs. The Trustees of Sixth Street Presbyterian Church, Cent. Law Jour., p. 145 ; Toledo, Wabash & Western Rly. Co. vs. Morrison, decided Spring Term, 1874, Sup. Ct. of Ill.)

II. The true question was, how much damage was done to the respondent by the establishment, erection and maintenance of said approach to said bridge over the lot on the east side of Craig's Alley. (Robb vs. Maysville & Mt. Sterling Turnpike R. Co., 3 Met., [Ky.] 117; Moeller vs. St. Louis & I. M. R. R. Co., 31 Mo., 262.)

The intervening of Craig's Alley between the lot on the east side and the brewery building on the west side of said alley does not preclude the respondents from recovering the damages done to the brewery property. The brewery property was an entirety.

WAGNER, Judge, delivered the opinion of the court.

When this cause was here before (49 Mo., 555) the judgment of the Common Pleas Court was reversed, because it held the finding of the commissioners conclusive, and refused to hear any evidence when the exceptions were filed. When the case was again called for a hearing, under a recent statute of this State, a jury was demanded and impaneled.

The facts now are the same as they were then. Defendants owned two lots in the city of Hannibal, situated immediately under the bluff on the Mississippi river. These lots were separated by Craig's alley. On the lot west of the alley a brewery was erected and in operation, and on the lot east of the alley, which was bounded by the river, was a malt house, horse power, pump and pipe. From this pump the pipe ran westward under the soil of the alley and was connected with the brewery, and by it the brewery was supplied with water.

Plaintiffs, by a proceeding under the statute, condemned and appropriated the eastern lot, causing an entire destruction of the malt house, horse power and water pipe, and thereby effectually precluded the defendants from using or operat-

ing the brewery.   Damages were claimed for the injury done to both pieces of property.

The court submitted issues to the jury, in substance as follows: 1st.  What was the value of the lot lying east of Craig's alley, belonging to the defendants, and sought by plaintiffs to be appropriated to their own use as a railroad bed?  2d.  Were the defendants, as owners of the lot west of Craig's alley with the improvements thereon, damaged by the appropriation of the ground east of the alley for the construction and maintenance of plaintiff's railroad?  If so, how much?  The jury found both issues for the defendants, and assessed separate damages for each lot.

To the submission of the second issue, the plaintiffs excepted, on the ground that they were not liable for damages to the property west of the alley.  Their position seems to be, that the operation of the malt grinder, horse power, pump and pipe on the lot east of the alley, did not entitle the defendants to a claim for damages to the property west of the alley, because the defendants owned no interest in the soil of the alley, and the two parcels of land were completely dissevered.  But this objection cannot be sustained.  It is erroneous in reference to the ownership of the fee in the alley, and gives entirely too narrow a construction to the statute as regards the damages recoverable in behalf of those who suffer injury on account of their property being appropriated.  The owner of land joining on a street, alley or public highway, owns the fee to the center thereof, subject to an easement in the public, and as the defendants owned on both sides, their fee extended to the whole alley.

The statute requires the commissioners "to assess the damages which the owner of the land may sustain by reason of such appropriation."  This by no means confines the assessment to the land actually taken.  That may constitute the smallest amount of the injury done.  There may be consequential damages which result by reason of the appropriation fairly comprehended within the scope of the law, and this case furnishes a strong illustration.  Such is the construction placed upon similar statutes in other States.

The Massachusetts statute, though using different language, is in spirit the same. It declares, that "every railroad corporation shall be liable to pay all damages that shall be occasioned by laying out and making and maintaining their road, or by taking any land or materials, etc.

In the case of Parker vs. The Boston & Maine Railroad, (3 Cush., 107) the plaintiff sought to recover consequential or incidental damages for an injury done to his land, lying near the track, but not touching it. Shaw, Ch. J., delivered the opinion of the court, and after referring to the statute said, "This is a remedial provision, and to be construed liberally to advance the remedy. It is made in the spirit of the declaration of rights, giving compensation to persons sustaining damage for the public benefit. Whatever this provision, by its true construction, declares that the party damnified shall receive, the company, by accepting a railroad charter, bind themselves to pay.

"The terms of the section must include something else besides taking lands and materials, because damages of that kind are distinguished from the former by the word 'or.' So the word 'occasioned,' points to any damage which may be directly or indirectly caused by the railroad. We are of the opinion, therefore, that a party who sustains an actual and real damage, capable of being pointed out, described and appreciated, may sue a complaint for compensation for such damages." Our statute gives whatever damage is sustained by reason of the appropriation of the land, and the Massachusetts statute gives damages that are occasioned by the laying out and making and maintaining the road. It is obvious that it is simply the employment of different language to express the same meaning. Therefore, there was no error in the ruling of the court on this point.

The next question to be considered, has reference to the measure of damages. The defendants introduced witnesses whose evidence tended to prove the value of the brewery, and that by reason of plaintiff's appropriation of the ground east of the alley, the brewery was rendered valueless, unless

the malt mill, pump and horse power should be placed in operation on the west side of the alley. They also introduced testimony tending to prove the expense of a transfer of the works to their property west of the alley, and restoration of water communication with the river, but the court of its own motion interposed and prohibited the further introduction of this character of testimony, and subsequently ruled it all out. The plaintiff made no objection to the testimony, but sought the privilege of introducing counter testimony on the same point. It undertook to prove by witnesses that the property on the east side of the alley was easily transferrable, to the property on the west side of the alley, so as to maintain communication with the river, and that this could be accomplished at a moderate expense. But the court peremptorily refused to hear any evidence on the subject, and this is assigned for error.

It is in many cases a matter of great difficulty to so adjust the measure of damages as to do exact justice to both parties. An approximation only can be arrived at.

In a negligent injury to real property, the general rule is to allow the plaintiff the difference between the market value of the land immediately before the injury occurred, and the like value immediately after the injury is complete, and not to take into consideration the cost of repairing the injury so as to replace the land in its former condition. (Shearm. & Redf. on Negl., § 602.)

But this rule is not universally applied, and must be taken with many qualifications. Where the injury could have been repaired at an expense much less than the depreciation in the market value of the whole land, the plaintiff in some cases is only allowed to recover the expense of such repair. Thus, in Waters vs. Brown, (44 Mo., 302) which was an action under the statute for damages to plaintiff's premises caused by the firing by defendant of a prairie, it was held that the rule for assessing damages would be the value of plaintiff's rails lost and destroyed by fire, and the loss of the use of the land during the time that was reasonably necessary to procure other

rails and rebuild the fence. And this would of course include the necessary expenses of replacing the fence.

Although in the present case the injury happened and the damage was sustained by virtue of a statutory authority, it is believed that the same rule would be the better doctrine. Where nothing but compensatory damages are given, the general rule is, that the recovery must be confined to the actual damage sustained.

In an action of covenant by the lessee against the lessor for failing to build a sufficient wall in accordance with his covenant, the lessee can recover such damages only as are direct and immediate, but not remote, speculative or contingent, which might have been avoided by his own act. The proper measure of damages would be the cost of repairing or building the wall, and compensation for the use of the premises of which he was deprived while they were undergoing repairs. (Fisher vs. Goebel, 40 Mo., 475.) Though the case at bar is not precisely analogous to one just alluded to, still the application of the same principles would subserve the ends of justice. After the appropriation of the land on the east side of the alley, on which the malt house, horse power, pump and pipe were situated, the brewery, which the evidence shows was very valuable, was rendered worthless. The amount of damages then would have been nearly equivalent to the whole value of the brewery. But if these fixtures and appliances could have been transferred to the western side of the alley and placed in such a situation that the brewery could have been just as effectively operated as it was before, then the actual loss to defendants would have been the trouble and expense of making the removal.

This then, we are inclined to think, would be the proper and appropriate measure of damages, viz: the cost and expense of removing the malt house, horse power, pump and pipe to the west side of the alley, so that they could be used as effectively and advantageously for running the brewery as it was run before, to which should be added compensation for the use of the brewery for what time it would have been

necessarily idle, whilst the change and transfer were being made.

Because the court erred in refusing to hear proper testimony on the question of damages, the judgment will be reversed and the cause remanded. The other judges concur.