STATE of Missouri, ex rel. REYNOLDS
COUNTY, Missouri,
Plaintiff-Respondent,

v.

Ralph H. RIDEN and Elaine S. Newmark
Riden, his wife; John Cutelli and Louise
Cutelli, his wife, and H. Lynn Boardman
and Sherrill A. Boardman, his wife, De-
fendants-Appellants,

and

Daniel J. Banderet and Francis M. Ban-
deret, his wife; Joe Barnes and Faye
Barnes, his wife; Paul C. Cox, and Hope
O. Cox, his wife; Alfred Lorentz and
Jackie Lorentz, his wife; Paul Parker
and Mary Jo Parker, his wife; Michael
Koch and Linda Koch, his wife; Thomas
Leach, Ralph Bourland and Philip L.
Schineer, Defendants.

Nos. 12114, 12125.

Missouri Court of Appeals,
Southern District,
Division Three.

Aug. 27, 1981.

George L. Fitzsimmons, Fitzsimmons & Fitzsimmons, Attys., Inc., of Clayton, A. W. Dieffenbach, Jr., Anderson, Brooking, Hammon & Dieffenbach, Hillsboro, for defendants-appellants.

L. Dwayne Hackworth, Pros. Atty., Centerville, for plaintiff-respondent.

HOGAN, Judge.

In this action brought on its behalf by its prosecuting attorney, Reynolds County sought a declaration that a road known as the Hyatt's Creek Road is a "legally estab-

lished" road within the meaning of the second clause of § 228.190, RSMo 1978, and further sought to enjoin defendants from obstructing, hindering or interfering with travel on the road. After a hearing without the aid of a jury, the trial court found for the plaintiff. Defendants Riden and Cutelli appealed, as did defendants Boardman. We ordered the appeals consolidated for purposes of argument.

The second clause of § 228.190 reads as follows:

"... [A]nd all roads that have been used as such by the public for ten years continuously, and upon which there shall have been expended public money or labor for such period, shall be deemed legally established roads...."

■ The case was tried and the proof presented upon the theory that the quoted part of § 228.190 was applicable. We review the judgment pursuant to Rule 73.-01(c), V.A.M.R., as construed in *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo.banc 1976), and of course the parties will be held to their trial theory in this court. *Morris v. Kansas City*, 391 S.W.2d 198, 200[4] (Mo. 1965); *Johnson v. Fotie*, 308 S.W.2d 662, 667[4] (Mo.1958); *Gilliam v. Gohn*, 303 S.W.2d 101, 108[16] (Mo.1957). The general question for decision, therefore, is whether the record supports the trial theory and thus the judgment. It follows that neither a prescriptive easement nor a common law or implied dedication is an issue on this appeal and we look solely to the requirements of the statute. *Drydale v. Kiser*, 413 S.W.2d 506, 507–508[2] (Mo.1967).

The road in question is in the southeast part of Reynolds County a short distance northeast of Ellington. Taking its north end as a beginning point, the road runs about 4,350 feet south to the Black River, then across the river in the same direction about 2,325 feet, then west approximately 3,150 feet. The parties stipulated that that part of the road south of Black River might be considered a legally established road. The appeals are therefore directed to that 4,350 feet of the road which lies north of Black River.

■ Defendants Riden and Cutelli have briefed two assignments of error. They contend there is no substantial evidence to support the judgment in two respects: (1) there is no record basis for the finding that the existing roadway between Hyatt's Creek and the Black River is in the same location as any roadway established by public user and maintenance in the past, and (2) there is no substantial evidence to support a finding that public money or labor has been expended on that segment of the road for 10 years continuously as required by § 228.190. Of course, both these arguments raise factual questions, and in this connection we bear in mind that when a cause is tried to the bench, the trial court functions as the trier of fact who resolves conflicts in the evidence; the trial judge determines the credibility of the witnesses and may accept or reject their testimony in part or as a whole. *Cusumano v. Outdoors Today, Inc.*, 608 S.W.2d 136, 139[4] Mo.App. 1980); *Prudential Property & Cas. Ins. v. Cole*, 586 S.W.2d 433, 434[3] (Mo.App.1979); *Gover v. Empire Bank*, 574 S.W.2d 464, 469[4] (Mo.App.1978). The judgment may be set aside as being against the weight of the evidence when our review generates a firm belief that the judgment is wrong. *Murphy v. Carron, supra*, 536 S.W.2d at 32.

■ To establish the location of the road, including that part of which defendants Riden and Cutelli complain, the county offered a survey prepared by the county surveyor and the testimony of several witnesses. Mr. Groat, the county surveyor, located a corner perpetuated in the manner prescribed by former § 60.310, in force when the survey was made. He also consulted the surveyor's notes to verify his location of a starting point. Groat then located and tracked the center line of the existing road. His survey was received without objection. The procedure followed by Mr. Groat complied with the requirements of § 60.150, and was prepared in the manner generally recommended for use in such cases. See Clark, Surveying and Boundaries, § 612 (4th ed. 1976). Even though it was subject to contradiction by "any competent species of

proof," the survey was prima facie evidence of its own correctness. *Chostner v. Schrock*, 64 S.W.2d 664, 666[7] (Mo.1933).

Paul Cox, 59 years of age, testified that he had been familiar with the Hyatt's Creek Road for at least 50 years. The course of the road at the time of trial was the "general location of the road" for as far back as Mr. Cox remembered. Mr. Cox moved from the area in 1952, but thereafter he had traveled across the road at least once a year until this suit was begun in 1977. There were minor variations in the course of the road; occasionally Black River would rise and the road would become temporarily impassable, but in general the course of the road was the same as Mr. Cox recalled as a boy and as a young man.

Alfred Lorentz, 45 years of age, was "born and raised" in the area. He lived about two miles north of the north end of the road. This witness was specifically asked: "Is it your testimony that the road from the [north end] down to Black River is in essentially the same location as it was 40 to 45 years ago?" He answered: "Yes, it is."

Defendant John Cutelli's testimony was all to the contrary. His testimony was that since 1962, that part of the road which runs north from Black River was impassable or non-existent; he, defendant Banderet and others had constructed and maintained the road now in existence.

The testimony of witnesses Cox, Lorentz, and Cutelli demonstrates the factual nature of the issue presented. No doubt the course of the road had been changed from time to time to avoid high water and potholes, but such minor deviations did not defeat the public's right of user. *Jenkins v. German*, 298 S.W.2d 486, 490 (Mo.App.1957). The trial court could quite reasonably have found that the course of that segment of the road in issue had not been materially changed for many years. Our examination of the record generates no firm belief that this conclusion was wrong.

The second point advanced by defendants Riden and Cutelli is likewise a factual point. To reiterate, they maintain there is no substantial evidence to support a finding that public money or labor had been expended on that segment of the road between Hyatt's Creek and the Black River for 10 years continuously as required by § 228.190.

We shall not undertake to recast and restate the evidence in tedious detail, but the county had convincing evidence of maintenance from several witnesses. Mr. Cox's memory of the Hyatt's Creek to Black River section of the road went back 50 years. He lived on or near the road from 1945 to 1952; he and the general public used the road during that period of time and no one was excluded from using the road. Cox moved from Reynolds County in 1952, but "[s]ince 1951 [he had] made it a point to travel . . . that river or that road . . . each year." Cox had seen people who were employed by the county operating maintenance equipment on the road during the time he owned property on or near the road. On cross-examination, Cox said he believed he had traveled over the entire length of the Hyatt's Creek road once since this proceeding was commenced in February 1977; the road was passable for all but very small vehicles but was "not in as good a shape" as it once had been.

Witness Eaton had used the road from 1937 or 1938 until 1943 as a log hauler. He had been on the road from time to time from 1937 to 1970. Eaton had seen people who lived in the general area; he had seen a motor grader "on both sides" of the river.

Witness Bryan Brewer, 79 years of age, had been familiar with the Hyatt's Creek road "practically all [his] life." During the "30's" Brewer had "worked the poll tax" on the road.

Witness Lorentz's memory of the Hyatt's Creek road went back 45 years. His family had "always" lived in that area. Lorentz had seen "the county grader and Harold Rayfield" operating maintenance equipment on the road. The last time Lorentz saw the county grader was in "around '77." In 1961, the county purchased the gravel to maintain the road near Black River, "[t]hey put up a gravel plant, the county did, and loaded trucks and hauled [the gravel]."

Joe Barnes, 65 years of age at trial time, lived near the north end of the Hyatt's Creek road. This witness had traveled the road from his property to the river on "a daily basis" during "the '40's" as a school bus driver; he had had property "just across the river" leased for the last 25 years. Barnes had "kept [live]stock . . . there and sometimes it was necessary to travel the road every day to check with the stock." He had seen the road being maintained by equipment operators whom he knew were employed by the county. On cross-examination, Barnes testified he had traveled the entire road from the head of Black River "from 1936 [to the] present time." This witness knew the road had been maintained because he had seen "the evidence" of maintenance, even though he had not seen the work being done.

Earl White was called as a rebuttal witness. White had been a judge of the Reynolds County Court for 6 years. As part of his duties, White had ordered county employees to grade the road from the north end all the way to Black River. The maintenance workers were sent out one or two times a year on the section of road in issue and the witness "occasionally" went to check their work.

Defendants Riden and Cutelli produced evidence tending to prove that the Hyatt's Creek road from Hyatt's Creek to the Black River was impassable in 1961, and that he and others had created the existing roadway by their own expenditure and effort.

■ It may be true that Hyatt's Creek road was not maintained as a primary road would have been maintained, and it may further be true that Black River occasionally made the road impassable, but the county's proof was sufficient to satisfy the statute. The applicable principles were stated by this court in *State v. Lewis*, 294 S.W.2d 954, 957–958 (Mo.App.1956), and were reiterated by our Supreme Court in *Liberty Township of Stoddard County v. Telford*, 358 S.W.2d 842, 843–844 (Mo.1962). Slightly paraphrased, the governing rules are that to establish a public road under § 228.190, it is not necessary to prove constant expendi-

ture of public money, or for that matter, expenditure thereof each and every year for the 10-year period. It is sufficient to show that an expenditure of public money or labor began and continued from time to time for the period of limitation as reasonably might be considered necessary or expedient by those in authority, and that the expenditure was sufficient to maintain the road in substantial repair and condition for public travel. The county's proof was sufficient to show that Hyatt's Creek road had, at some time, become an established road under the provisions of § 228.190. Cf. *Liberty Township of Stoddard County v. Telford, supra*, 358 S.W.2d at 844; *State v. Lewis, supra*, 294 S.W.2d at 957–958.

In connection with this point, we observe that no contention is made in this court that the part of Hyatt's Creek road in question had been abandoned by nonuser. Inasmuch as the point has not been briefed or argued, we shall not raise it sua sponte.

Defendants Boardman also contend that the county failed to prove it had expended public money or labor for 10 years continuously in maintaining the Hyatt's Creek road in substantial repair and condition for public use and travel. What we have just said disposes of this point.

■ Defendants Boardman further argue that the trial court erred in adjudging the existence of a county road without specifying the width of the road and that the plaintiff failed to meet its burden of proof because it did not prove the width of the road. True enough, the county surveyor ran the line which marks the *center* of the road, but his reason for doing so is obvious; abutters usually have a reversionary interest in the roadway, and ordinarily that interest runs to the center of the road. *Grant v. Moon*, 128 Mo. 43, 30 S.W. 328 (1895); *Hannibal Bridge Co. v. Schauerbacher, et al.*, 57 Mo. 582, 585 (1874). Contrary to the bare assertion made in the Boardman brief, this action does not involve the establishment of a prescriptive easement, nor is it similar in the respects asserted to actions in ejectment or to quiet title. Moreover, the "width" statute, § 229.010, and its predeces-

sors, have not been construed as defendants Boardman suggest. Present § 229.010 originated as part of a statutory scheme which gave county courts the power to establish *new* roads. Chapter 151, § 1, RSMo 1845, provided:

"All county roads shall be opened and repaired, according to the provisions of this act."

Section 3 provided:

"All county roads shall be cut out not less than twenty feet, nor more than forty feet wide, to be determined, from time to time, by the county court ordering the opening of the same, according to the supposed utility of such road."

At first, the "width" statutes were rather strictly construed, *Snoddy et al. v. County of Pettis*, 45 Mo. 361, 364 (1870), but by 1894, that strict construction had been relaxed. In *In re Essex Ave.*, 121 Mo. 98, 25 S.W. 891 (1894), our Supreme Court again addressed the "width" statute, and held that while a petition for a new road was required to state the proposed beginning, course and termination thereof, stating the proposed width ". . . was not a jurisdictional fact ... and might well have been disregarded, *as the law fixes the width at which all public roads shall be established.*" (Our emphasis.) *In re Essex Ave., supra,* 121 Mo. at 102–103, 25 S.W. at 892. The court further observed, 121 Mo. at 102, 25 S.W. at 892, that it was unable to see how the appellants [were] injured by the establishment of a road of a less number of feet in width than that petitioned for. The present "width" statute, now numbered as § 229.010, has its origin in a drastic revision of the road laws enacted in 1917, Laws of Mo.1917, p. 445, but we see no reason to construe the present "width" statute more narrowly than its predecessors. There is no contention that the width of the Hyatt's Creek road is greater than 30 feet, and in the absence of any indication that the trial court intended the road to be more than 30 feet wide, there is no prejudice to defendants Boardman.

The final point made by defendants Boardman is that the court erred in including them in the injunctive order because there was no showing they ever interfered with public travel upon Hyatt's Creek road, or that they threatened or conspired with others to do so. The point is well taken. As a general rule, an injunction should not issue to prevent the doing of an act unless it is shown that reasonable grounds exist for apprehending that without the injunction the act enjoined will be committed. *Lester Real Estate Co. v. City of St. Louis*, 169 Mo. 227, 234, 69 S.W. 300, 302 (1902); *St. Louis 221 Club v. Melbourne Hotel Corp.*, 227 S.W.2d 764, 769–770[11–14] (Mo.App.1950); *Eckhardt v. Bock*, 159 S.W.2d 395, 398[2] (Mo.App.1942). There is no reason to suppose different principles should apply to injunctions to prevent the obstruction of a highway or public road. Cf. *Carlin v. Wolff*, 154 Mo. 539, 545, 51 S.W. 679, 680[3] (1899), aff'd en banc, 154 Mo. 539, 55 S.W. 441 (1900). The record is devoid of any evidence indicating defendants Boardman have interfered with public travel on Hyatt's Creek road, or that they have threatened or conspired with others to do so. The injunction should be modified to except defendants H. Lynn Boardman and Sherrill A. Boardman, and pursuant to Rule 84.14, V.A.M.R., the injunction is accordingly amended.

No other error materially affecting the merits of the action appears. Therefore, in Cause No. 12114, the appeal of defendants Riden and Cutelli, the judgment is in all respects affirmed. In Cause No. 12125, the appeal of defendants Boardman, the judgment is modified to exclude them from the injunctive order, and is in all other respects affirmed.

MAUS, P. J., not participating.

PREWITT, J., concurs.