**Hazel KNOWLTON,
Plaintiff-Respondent,**

v.

**Estle KNOWLTON and Carolyn Michnal, Defendants-Appellants.**

**Nos. 13255, 13256.**

Missouri Court of Appeals,
Southern District,
Division Three.

July 3, 1984.

---

**Deborah Klaus BONFANTI, Appellant,**

v.

**Sharon SYKORA, Respondent.**

**No. 47070.**

Missouri Court of Appeals,
Eastern District,
Division One.

July 3, 1984.

Charles E. Foehner, III, St. Louis, for appellant.

Anthony R. Behr, Clayton, for respondent.

### ORDER

Ted M. Henson, Jr., Scott & Henson, Poplar Bluff, for defendants-appellants.

Daniel T. Moore, L. Joe Scott, Daniel T. Moore, Poplar Bluff, for plaintiff-respondent.

HOGAN, Judge.

This appeal is taken from two interlocutory orders in partition. The trial court determined the rights of the parties and ordered a sale as provided by Mo.R.Civ.P. 96.08. We affirm, emphasizing that we decide only this case upon its peculiar facts.

In Appeal No. 13255, plaintiff Hazel Knowlton filed a petition for partition of three tracts of land. The first of the three parcels is a .9-acre tract at Neelyville; the second is a 25-acre tract 9 miles south of Poplar Bluff on Highway 67. It was stipulated upon trial that title to the third tract is in defendant Estle Knowlton. As to Appeal No. 13256, it became apparent at some point in the proceeding that defendant Michnal had an interest in the .9-acre tract. Plaintiff filed a separate action in partition against defendant Michnal in which defendant Estle Knowlton was permitted to intervene. Defendant Michnal is defendant Estle Knowlton's daughter by another marriage. Defendant Michnal did not appear nor testify at the trial. The two causes were consolidated and tried together. The appeals shall be considered together.

As we understand the parties' pleadings and stipulations, giving both fair intendment, it was plaintiff's theory that she and defendant Estle Knowlton were seized of the 25-acre tract—the "home place"—as

tenants in common; she and defendant Michnal were seized of the .9-acre tract at Neelyville as tenants in common, and she was entitled to a one-half interest in both tracts. Defendant Estle Knowlton admitted seizin of record as averred but denied that plaintiff had any interest in either tract, because he had taken title to the home place upon the oral agreement that plaintiff Hazel Knowlton would reconvey her interest to him at his request. He further maintained that he and defendant Michnal had taken title to the Neelyville tract upon the same oral agreement. Estle and defendant Michnal counterclaimed, requesting alternatively that the title to both tracts be quieted in them or alternatively that the court impose a constructive trust upon plaintiff's share of the proceeds to compensate them for improvements made and taxes paid upon both parcels.

The cause was tried to the court. It was stipulated as a fact that the land could not be partitioned in kind without great prejudice to the parties. Defendant Michnal, as noted, appeared only by attorney. In Appeal No. 13255, the court found that plaintiff was vested with a one-half interest in the home place and defendant was entitled to a one-half interest therein. Defendant Estle's counterclaim for improvements made or to quiet title in him was denied. In Appeal No. 13256, the trial court found that plaintiff was vested with a one-half interest in the Neelyville tract and defendant Michnal was vested with a one-half interest therein. Defendant's counterclaim was denied. The court ordered partition of both tracts at public sale.

Upon trial, the court heard evidence from plaintiff Hazel Knowlton establishing that she and Estle were married in July 1949. They were divorced July 18, 1956. They resumed cohabitation in 1957, after Hazel became pregnant with her son and thereafter cohabited as husband and wife for 25 or 26 years. Hazel kept house, cooked meals, and looked after Estle's businesses, a "tavern" and a "resort," in his absence. Hazel unequivocally denied any agreement that title to any property was taken upon condition she would reconvey it to Estle.

Hazel further testified that Estle looked after most of the business affairs in which the two were involved.

Estle's version of the facts was that the Neelyville tract was purchased in February 1974; that he had purchased the tract for $13,300 and that "[h]alf of it I paid and my daughter paid for the other half." His "agreement" with Hazel was: "I told her, asked her if I put her name on it, I was in bankrupt proceedings and I told her if I put her name on it, would she sign it back over to me after things were settled and she said yes." Estle also claimed to have spent $32,107.15 improving this tract.

As for the 25-acre home place, Estle testified that this property was purchased in 1959. Estle testified further as follows: "Q. What was your understanding or agreement? A. I had another piece of property and I had some automobiles and I asked her, I told her if I put her name on it, a fellow was crowding me on this other piece of property, and I didn't know but what he might foreclose on me, and if I had to file bankruptcy, I told her I had to put her name on it, so I put her name on it the day I bought it. Q. Did she agree to do anything or not do anything? A. Yes, sir, she agreed some day she would, when the son got grown, she would take her name off of it." Estle did admit that when the home place was purchased, he borrowed $8,000 to build it at Poplar Bluff Building and Loan. Hazel signed both the note and deed of trust. He further admitted that Hazel had kept house, cooked meals, and reared their son, and had participated in the management of his businesses, all the while deprecating her contribution. Estle testified he had expended $21,722 on the home place building the house and keeping it in repair.

In this court, Estle assigns error to both judgments upon the ground that they are against the weight of the evidence, citing us to *Brooks v. Kunz,* 637 S.W.2d 135 (Mo.App.1982); *Ravenscroft v. Ravenscroft,* 585 S.W.2d 270 (Mo.App.1979) and § 452.330, RSMo 1978. Respondent replies

by saying that the result can be justified on the ground that the court, as trier of fact, was entitled to believe all, part or none of the testimony of any witness, citing us to *Cockrum v. Cockrum*, 550 S.W.2d 202, 205 (Mo.App.1977).

As both parties relied entirely upon parol proof—the record does not reflect the tender or reception of a single exhibit—the judgments might well be affirmed solely upon the basis suggested by the plaintiff, which, more fully stated, is that when a cause is tried to the bench, the trial judge resolves conflicts in the evidence and determines the credibility of the witnesses and may accept their testimony in part or as a whole. *State ex rel. Reynolds County v. Riden*, 621 S.W.2d 366, 368 (Mo.App.1981). Such a ruling would deal with the factual aspects of the case, and would be dispositive without addressing the defendants' theories. Although we will undertake no general discussion of the law, in fairness to defendants we must briefly address the question whether the trial court erroneously applied the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

The defendants proceeded on the theory that they and the plaintiff were seized of the property in issue as tenants in common, and they will be held to that theory on appeal. *Gilliam v. Gohn*, 303 S.W.2d 101, 108[16] (Mo.1957); *State ex rel. Reynolds County v. Riden*, 621 S.W.2d at 368.

One of the general rules upon which defendants relied may be stated broadly thus:

> "Tenants in common, since they hold separate interests, need not have equal shares in the property.... They are, however, presumed to take equal shares in the absence of evidence of a contrary intention. That they contributed in unequal amounts ... has ... been regarded as evidence of such a contrary intention."

2 Tiffany, Real Property § 426, p. 213 (3d ed. 1939). To the same effect see 2 American Law of Property § 6.5, pp. 19–20 (Cas-

ner ed. 1952). This principle was applied in *Anderson v. Stacker*, 317 S.W.2d 417 (Mo. 1958); *Atkinson v. Dasher*, 588 S.W.2d 215 (Mo.App.1979), and *Brooks v. Kunz*, 597 S.W.2d 183 (Mo.App.1980). The principle announced and applied in those cases does not control this case. Estle's motive in making a voluntary transfer of interest to the plaintiff and to his daughter was unmistakably to put assets beyond the reach of his creditors.

So, the controlling principle here is that stated in *Re Buder's Estate*, 317 S.W.2d 828, 836[1] (Mo.1958). That controlling principle, as stated in *Buder* and a good many other cases, is that neither a fraudulent or voluntary grantor, nor his heirs, can undo the corrupt or voluntary transaction. Equity leaves the grantor where it finds him. This rule is subject to some exceptions, but none of them apply here.

We are also generally familiar with the rule that the right of compensation for improvements made without the consent of cotenants is a legal right, but may be enforced in equity by requiring payment out of the proceeds in partition when the improvements were made in good faith, were of a substantial nature, materially enhance the value of the property and the circumstances show it would be equitable to do so. *Brooks v. Kunz*, 637 S.W.2d at 140[6]. However, the dispositive question, where cotenants are concerned, is always: What is just and equitable under the particular circumstances? The amount recovered should never exceed the amount by which the value of the property was enhanced *solely by reason of the improvements. Buschmeyer v. Eikermann*, 378 S.W.2d 468, 479 (Mo.1964). There is no proof of expenditure beyond what was necessary on the home place and no showing of any enhancement of the value of the Neelyville tract solely by reason of the improvements. It would have been unconscionably inequitable to allow plaintiff nothing for her contribution, even though it was not susceptible of precise valuation. There was no misapplication of the law.

Consideration of the whole record creates no firm belief that the judgments or decrees entered were wrong. Accordingly, both judgments are in all respects affirmed.

GREENE, C.J., CROW, P.J., and MAUS and PREWITT, JJ., concur.